DOUBLEDAY, DORAN & COMPANY, INC., et al., Appellants, *v.* R. H. MACY & Co., INC., Respondent.

(Argued December 2, 1935; decided January 7, 1936.)

*Morris L. Ernst, Ambrose Doskow* and *Alexander Lindey* for appellants. The principle of price maintenance has been recognized and approved by the courts. The only effect of the Fair Trade Act (L. 1935, ch. 976) is to give full protection to a legitimate business interest which has been long recognized but inadequately protected and to make " meaningful " the method of protection. (*People ex rel. Central Park, N. & E. R. Co.* v. *Willcox*, 194 N. Y. 383; *Stillwell Theater, Inc.*, v. *Kaplan*, 259 N. Y. 405; *Locker* v. *American Tobacco Co.*, 121 App. Div. 443; 195 N. Y. 565; *Marsich* v. *Eastman Kodak Co.*, 244 App. Div. 295; *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373; *United States* v. *Colgate & Co.*, 250 U. S. 300; *Frey & Son* v. *Cudahy Packing Co.*, 256 U. S. 208; *Cream of Wheat Co.* v. *Federal Trade Comm.*, 14 Fed. Rep. [2d] 40; *Harriet Hubbard Ayer, Inc.*, v. *Federal Trade Comm.*, 15 Fed. Rep. [2d] 274; 273 U. S. 759; *United States* v. *General Electric Co.*, 272 U. S. 476; *Locker* v. *American Tobacco Co.*, 121 App. Div. 443; 195 N. Y. 565; *Park & Sons Co.* v. *National Wholesale Druggists' Assn.*,

175 N. Y. 1; *Murphy* v. *Christian Press Assn. Pub. Co.*, 38 App. Div. 426; *Walsh* v. *Dwight*, 40 App. Div. 513; *Straus* v. *American Publishers' Assn.*, 85 App. Div. 446; *Garst* v. *Charles*, 187 Mass. 144; *Dr. Miles Medical Co.* v. *Goldthwaite*, 133 Fed. Rep. 794; *Dr. Miles Medical Co.* v. *Platt*, 142 Fed. Rep. 606; *Wells & Richardson Co.* v. *Abraham*, 146 Fed. Rep. 190; 149 Fed. Rep. 408; *Dr. Miles Medical Co.* v. *Jaynes Drug Co.*, 149 Fed. Rep. 838.) The Fair Trade Act is valid. (*Boston Store* v. *American Graphophone Co.*, 246 U. S. 8; *Bobbs-Merrill Co.* v. *Straus*, 210 U. S. 339; *Bauer* v. *O'Donnell*, 229 U. S. 1; *Trade Mark Cases*, 100 U. S. 82; *Ingersoll & Bro.* v. *Hahne & Co.*, 88 N. J. Eq. 222; 89 N. J. Eq. 332.) The means employed by the Fair Trade Act are reasonably related to the achievement of the objective of fair competition. (*Nebbia* v. *New York*, 291 U. S. 502; *Chicago, B. & Q. R. R. Co.* v. *McGuire*, 219 U. S. 549; *Chattanooga Foundry* v. *Atlanta*, 203 U. S. 390; *Liberty Warehouse Co.* v. *Burley Tobacco Growers Co-operative Marketing Assn.*, 276 U. S. 71; *Dahnke Walker Milling Co.* v. *Bondurant*, 257 U. S. 282; *Kansas City Southern R. R. Co.* v. *Anderson*, 233 U. S. 325; *St. Louis, I. M. & S. R. Co.* v. *Wynne*, 224 U. S. 354; *Matter of Waterson, Berlin & Snyder Co.*, 48 Fed. Rep. [2d] 704; *Lord Strathcona S. S. Co.* v. *Dominion Coal Co.*, [1926] A. C. 108; *Werderman* v. *Societe Generale d'Electricite*, 19 Ch. Div. 246; *Murphy* v. *Christian Press Assn. Pub. Co.*, 38 App. Div. 426; *New York Bank Note Co.* v. *Hamilton Bank Note Co.*, 83 Hun, 593; *Great Lakes & St. Lawrence T. Co.* v. *Scranton Coal Co.*, 239 Fed. Rep. 603; *Montgomery Enterprises* v. *Empire Theater Co.*, 204 Ala. 566; *Matter of Rider*, 16 R. I. 271; *Lorillard Co.* v. *Weingarden*, 280 Fed. Rep. 238.)

*Hugh S. Williamson* and *George W. Morgan, Jr.*, for National Straight Whiskey Distributing Company, Inc., *amicus curiæ*. The Fair Trade Act is a reasonable legislative enactment designed to promote public welfare. It is neither arbitrary nor discriminatory and is, therefore, a

valid exercise of the police power. (*Leslie* v. *Lorillard*, 110 N. Y. 519; *Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161; *Marsich* v. *Eastman Kodak Co.*, 244 App. Div. 295; *Nebbia* v. *New York*, 291 U. S. 502; *Ingersoll Bros.* v. *Hahne & Co.*, 88 N. J. Eq. 332; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Bacon* v. *Walker*, 204 U. S. 311; *Klein* v. *Maravelas*, 219 N. Y. 383; *Boston Stores* v. *American Graphophone Co.*, 246 U. S. 8; *Noble State Bank* v. *Haskell*, 219 U. S. 104; *Sinking Funa Fases*, 99 U. S. 700.)

*Roy M. Sterne* for New York State Pharmaceutical Association, Inc., et al., *amici curiæ*. Resale price maintenance contracts have never been contrary to public policy and the State has expressly declared its public policy to be in favor of such contracts. (*Walsh* v. *Dwight*, 40 App. Div. 513; *Park & Sons* v. *National Druggists' Assn.*, 175 N. Y. 1; *Grogan* v. *Chaffee*, 156 Cal. 611; *Gheradelli Co.* v. *Hunsicker*, 104 Cal. 355; *Ingersoll & Bros.* v. *Hahne & Co.*, 88 N. J. Eq. 222; *Fisher Flouring Mills Co.* v. *Swanson*, 76 Wash. 649; *Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161.) No constitutional rights of respondent are invaded by the act; it does not constitute an unauthorized delegation of powers and is not arbitrary or unreasonable. (*City of Louisville* v. *Cumberland Tel. Co.*, 225 U. S. 430; *People* v. *Lochner*, 177 N. Y. 145.) The economic question is one for the Legislature. (*Nebbia* v. *New York*, 291 U. S. 502; *Marsich* v. *Eastman Kodak Co.*, 244 App. Div. 295.)

*Charles Goldman* and *Harold Dublirer* for Cooper & Cooper, Inc., *amicus curiæ*.

*Crichton Clarke* for American Booksellers' Association, *amicus curiæ*. The willful and knowing sale of a trademarked commodity at a price below that stipulated in a resale price contract is unfair competition in fact and the Legislature has constitutional power to declare the same to be actionable as such. (*Bitterman* v. *Louisville &*

*Nashville R. R. Co.*, 207 U. S. 205; *Bobbs-Merrill* v. *Straus*, 210 U. S. 339; *United States* v. *United States Steel Corp.*, 251 U. S. 417; *Miles* v. *Park*, 220 U. S. 373; *United States* v. *American Tobacco Co.*, 221 U. S. 106; *Bauer* v. *O'Donnell*, 229 U. S. 1; *Motion Picture Patents Co.* v. *Universal Film Mfg. Co.*, 243 U. S. 502; *Boston Store* v. *American Graphophone Co.*, 246 U. S. 8; *United States* v. *Colgate & Co.*, 250 U. S. 300; *United States* v. *Schrader's Son, Inc.*, 252 U. S. 85; *Frey & Son* v. *Cudahy Packing Co.*, 256 U. S. 208; *Federal Trade Comm.* v. *Beechnut Packing Co.*, 257 U. S. 441; *United States* v. *General Electric Co.*, 272 U. S. 476.)

*Leon Lauterstein, Melbourne Bergerman* and *Emanuel Dannett* for respondent. The statute deprives retailers of liberty and property without due process of law, in violation of the Fourteenth Amendment of the Federal Constitution and of section 6 of article 1 of the State Constitution. (*People ex rel. Moskowitz* v. *Jenkins*, 202 N. Y. 53; *City of Carrollton* v. *Bazzette*, 159 Ill. 283; *Allgeyer* v. *Louisiana*, 165 U. S. 578; *People* v. *Nebbia*, 262 N. Y. 259; *New State Ice Co.* v. *Liebmann*, 285 U. S. 262; *Darweger* v. *Staats*, 267 N. Y. 290; *Wolff Packing Co.* v. *Court of Industrial Relations*, 262 U. S. 522; *People* v. *Budd*, 117 N. Y. 1.) Since the effect and purpose of section 2 of the statute is the fixing of prices on ordinary commodities sold by ordinary businesses, it is not within the scope of any constitutional power of the Legislature. (*Wolff Packing Co.* v. *Court of Industrial Relations*, 262 U. S. 522; *Fairmont Creamery Co.* v. *Minnesota*, 274 U. S. 1; *People* v. *Gillson*, 109 N. Y. 389; *New State Ice Co.* v. *Liebmann*, 285 U. S. 262; *Ribnik* v. *McBride*, 277 U. S. 350; *People* v. *Nebbia*, 262 N. Y. 259; *Nebbia* v. *New York*, 291 U. S. 502; *People* v. *Budd*, 117 N. Y. 1; *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389; *Block* v. *Hirsh*, 256 U. S. 135.) The means provided by the statute to achieve its purpose are unreasonable, arbitrary and discriminatory, and are wholly irrevelant to any legislative

purpose. (*Nebbia* v. *New York*, 291 U. S. 502; *Nectow* v. *City of Cambridge*, 277 U. S. 183; *Adams* v. *Tanner*, 244 U. S. 590; *Burns Baking Co.* v. *Bryan*, 264 U. S. 504; *Weaver* v. *Palmer Bros. Co.*, 270 U. S. 402; *Schlesinger* v. *Wisconsin*, 270 U. S. 230; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Eubank* v. *Richmond*, 226 U. S. 137; *Baltimore* v. *Radecke*, 49 Md. 217; *New State Ice Co.* v. *Liebmann*, 285 U. S. 262; *Meyer* v. *Nebraska*, 262 U. S. 390; *Pierce* v. *Society of Sisters of Holy Name*, 268 U. S. 510; *Buchanan* v. *Warley*, 245 U. S. 60; *Darweger* v. *Staats*, 267 N. Y. 290; *Adams* v. *Tanner*, 244 U. S. 590; *Fairmont Creamery Co.* v. *Minnesota*, 274 U. S. 1; *People ex rel. Moskowitz* v. *Jenkins*, 202 N. Y. 53; *People* v. *Gillson*, 109 N. Y. 389; *Wolff Packing Co.* v. *Court of Industrial Relations*, 262 U. S. 522; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Sears, Roebuck Co.* v. *Federal Trade Comm.*, 258 Fed. Rep. 307; *Sinclair Refining Co.* v. *Federal Trade Comm.*, 276 Fed. Rep. 686; 261 U. S. 463; *Kresge Co.* v. *Champion Spark Plug Co.*, 3 Fed Rep. [2d] 415; *Prestonettes* v. *Coty*, 264 U. S. 359; *Russia Cement Co.* v. *Frauenhar*, 133 Fed. Rep. 518; *Gorham Mfg. Co.* v. *Emery-Bird-Thayer Dry Goods Co.*, 92 Fed. Rep. 774; 104 Fed. Rep. 243; *Vitascope* v. *United States Phonograph Co.*, 83 Fed. Rep. 30; *Straus* v. *Victor Talking Machine Co.*, 243 U. S. 490.) The statute unconstitutionally delegates to private persons legislative power in violation of section 1 of article 3 of the State Constitution. (*Darweger* v. *Staats*, 267 N. Y. 290; *Panama Refining Co.* v. *Ryan*, 293 U. S. 388.)

*John C. Watson* for John G. Myers Co., Inc., *amicus curiæ.* The statute deprives a defendant thereunder of property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States and section 6 of article 1 of the State Constitution. (*People* v. *Nebbia*, 262 N. Y. 259; 291 U. S. 502; *New State Ice Co.* v. *Liebmann*, 285 U. S. 262; *Darweger* v. *Staats*, 267 N. Y. 290; *Wolff Packing Co.* v. *Court of*

*Industrial Relations,* 262 U. S. 522; *People* v. *Budd,* 117 N. Y. 1; *People* v. *Gillson,* 109 N. Y. 389; *Fairmont Creamery Co.* v. *Minnesota,* 274 U. S. 1; *Ribnik* v. *McBride,* 277 U. S. 350; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Block* v. *Hirsh,* 256 U. S. 135.) The statute is arbitrary, capricious, discriminatory and irrelevant to any proper legislative purpose, and it unconstitutionally delegates to private persons legislative power in violation of section 1 of article 3 of the State Constitution. (*Nebbia* v. *New York,* 291 U. S. 502; *Nectow* v. *Cambridge,* 277 U. S. 72; *Adams* v. *Tanner,* 244 U. S. 590; *Burns Baking Co.* v. *Bryan,* 264 U. S. 504; *Weaver* v. *Palmer Bros. Co.,* 270 U. S. 402; *Schlesinger* v. *Wisconsin,* 270 U. S. 230; *Liggett Co.* v. *Baldridge,* 278 U. S. 105; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Washington* v. *Roberge,* 278 U. S. 116; *Baltimore* v. *Radecke,* 49 Md. 217; *Panama Refining Co.* v. *Ryan,* 293 U. S. 388; *Schechter Poultry Corp.* v. *United States,* 295 U. S. 495.)

*Jay Leo Rothschild* for Hearn Department Stores, Inc., *amicus curiæ.*

CRANE, Ch. J. An appeal taken directly to this court from a dismissal of the complaint by the Special Term of the Supreme Court, held in Westchester county, brings up for determination solely the constitutionality of chapter 976 of the Laws of 1935. The Special Term held it to be unconstitutional.

The action is brought to restrain R. H. Macy & Co., Inc., from offering for sale three books at a less price than that fixed by the publisher. The complaint alleges that Doubleday, Doran & Company, Inc., is a publisher and manufacturer of books, and that Doubleday, Doran Book Shops, Inc., is a seller and distributor of books at retail. All books sold by Doubleday, Doran & Company, Inc., to Doubleday, Doran Book Shops, Inc., are sold under contracts between the parties with certain provisions that the buyer will not resell such books except

at the prices stipulated by the vendor. The prices thus stipulated were for the book called "Some Day," $2 at retail; for "Vogue's Book of Etiquette," $3; and for "The Garden Notebook," $1.50. The complaint then sets forth that R. H. Macy & Co., Inc., has purchased these books and is advertising them for sale at the respective prices of $1.76, $2.64 and $1.31 per volume. Macy & Co. purchased the books for resale under no contract limiting the price, and none is alleged. The plaintiffs do not claim that Macy is bound by any agreement but that it is forced by the provisions of chapter 976 of the Laws of 1935 to conform to the price which they stipulated as the retail price in a contract between themselves, that is, a contract of sale between Doubleday, Doran & Co., Inc., and Doubleday, Doran Book Shops, Inc. Although the publisher sold the books to Macy without any restrictions as to price, it now says the law prevents Macy from disposing of them at a lower figure than that fixed by the publisher with another. What is this law which has thus undertaken to supplant contracts? We give it in full:

"Section 1. Subdivision 1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the State of New York by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity except at the price stipulated by the vendor.

"(b) That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

"2. Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may

be resold without reference to such agreement in the following cases:

" (a) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.

" (b) When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

" (c) By any officer acting under the orders of any court.

" § 2. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section one of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.

" § 3. This act shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices.

" § 4. The following terms, as used in this act, are hereby defined as follows: ' Producer ' means grower, baker, maker, manufacturer or publisher. ' Commodity ' means any subject of commerce.

" § 5. If any provision of this act is declared unconstitutional it is the intent of the legislature that the remaining portions thereof shall not be affected but that such remaining portions remain in full force and effect.

" § 6. This act shall take effect immediately."

Section 2 is that part of the law which is questioned in this case. The interpretation given below to this section and by all the parties apparently is that it attempts to accomplish just what the plaintiffs claim for it, as stated in the complaint and as given above. But for this we would have grave doubts whether the Legislature ever intended to fix the price of books after they had been purchased in the open market under no agreement as to resale price. Thus it is possible to read section 2 as referring to the contract made under section 1, or as

binding on those books like an equitable servitude which had been parted with under a contract as to resale price. However, for the purpose of this appeal we confine ourselves to the constitutionality of the statute as construed by the parties and the court below and treat this section 2 as allowing book price-fixing in the absence of contract made by the purchaser or his agents.

We agree with the Special Term that, if this be its meaning, the law is unconstitutional. That the States cannot fix the selling price of any and all commodities has been settled. (*Williams* v. *Standard Oil Co.*, 278 U. S. 235; *Tyson & Bro.* v. *Banton*, 273 U. S. 418; *Wolff Packing Co.* v. *Court of Industrial Relations*, 262 U. S. 522; *Straus* v. *Victor Talking Machine Co.*, 243 U. S. 490.) Books, at least these books, are not " affected with a public interest " any more than theatre tickets; no emergency has yet arisen in literary publications, and the business is not such as comes within the class which must submit to rate-fixing. Circumstances which cannot be foreseen from one generation to another may arise which will require certain articles to submit to regulatory prices in order that the public may get them at all or get them in a pure and beneficial state. We cannot always express legislative power in exact formulas nor decide a case before it happens. Experience is the mother of teachers. Under the *Nebbia* case for instance ( *Nebbia* v. *New York*, 291 U. S. 502) no one would doubt now that New York State would have the power to get milk to the public somehow if any combination of forces threatened to shut off all supply or to deteriorate that which was supplied. The price might be an element to be considered with other things in such a case. So we thought in *People* v. *Nebbia*, 262 N. Y. 259. But to fix arbitrarily the price of books by legislation and not by agreement comes within the condemnation of the decisions which have heretofore dealt with like legislation. What the Legislature cannot do directly it cannot do indirectly nor does it cease to be

a price fixed by the Legislature because that body has clothed the publisher with the power or authority to establish it. For a publisher to agree with its subsidiary or agent to the price of a book which shall thereafter bind all other parties who purchase like books from the publisher is in reality a method whereby the Legislature fixes the price; it is a species of delegated authority.

The plaintiff, Doubleday, Doran & Company, Inc., the publisher, was not obliged to sell Macy & Co. It could do so or not as it pleased and it could refuse to sell because Macy was cutting the price. (*United States* v. *Colgate & Co.*, 250 U. S. 300.) Even this right, however, may have its limitations. (*Federal Trade Comm.* v. *Beech-Nut Packing Co.*, 257 U. S. 441.) The publisher made no such refusal; it sold Macy. Likewise the publisher could have bound Macy by contract not to sell below a fixed price even though the restriction might not extend further to one who subsequently purchased without restrictive stipulation. (*Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373; *Boston Store of Chicago* v. *American Graphophone Co.*, 246 U. S. 8; *Bobbs-Merrill Co.* v. *Straus*, 210 U. S. 339; *Park & Sons Co.* v. *National Wholesale Druggists' Assn.*, 175 N. Y. 1.) Macy bought from the publisher or someone these books without any agreement as to their resale price.

The license or agency agreements have no application to the facts here before us. (*United States* v. *General Electric Co.*, 272 U. S. 476.)

The judgment below, declaring section 2 of chapter 976 of the Laws of 1935 unconstitutional as applied to the facts set forth in the complaint, and dismissing the complaint, should be affirmed, with costs.

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment affirmed.