GENERAL ELECTRIC COMPANY, a corporation of the State of New York,

*vs.*

PHILIP KLEIN, trading as PHIL'S DISTRIBUTORS,

*Supreme Court, on Certification, June 9, 1954.*

Before SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ.

*John J. Morris, Jr., H. James Conaway, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

*John Van Brunt, David Snellenberg, II,* of Killoran & Van Brunt, Wilmington, for defendant.

*Thomas Cooch,* of Connolly, Cooch & Bove, Wilmington, filed a brief as *amicus curiae.*

SOUTHERLAND, Chief Justice, for the court: There is presented to us the question of the constitutionality of the "non-signer" provisions of the *Delaware Fair Trade Act, 6 Del.C.* § 1906.

Plaintiff is a manufacturer of electrical appliances bearing its trade-mark. It has entered into contracts with retail merchants in Delaware providing that such retailers shall not sell certain of such products at prices below the minimum resale prices fixed in the contracts. Defendant, a Wilmington retail merchant, is not a party to any such contract. Plaintiff asserts that defendant, with notice of such contracts, wilfully and knowingly sold plaintiff's products at prices below the minimum resale prices so fixed, in violation of the *Fair Trade Act.* Plaintiff accordingly seeks to enjoin defendant permanently from such alleged violations of the law.

Defendant replies that the "non-signer" provisions of the *Fair Trade Act* are unconstitutional.

The issue of law thus framed has been certified to us by the Chancellor in two questions, which are as follows:

1. *"Are the provisions of the Delaware Fair Trade Act, Chapter 19, Title 6, Delaware Code of 1953, as to non-signers of fair trade contracts, an unlawful exercise of the police power of the State of Delaware because they have no reasonable relation to the public health, morals, safety and welfare?"*

2. *"Are non-signers of fair trade contracts subject to the provisions of the Delaware Fair Trade Act, Chapter 19, Title 6, Delaware Code of 1953, thereby deprived of their property without due process of law, contrary to Sections 7 and 8, Article I, Constitution of the State of Delaware?"*

The *Delaware Fair Trade Act* was passed in 1941. 43 *Del.L.Ch.* 201. Its declared purpose, as appears from its title, is "to protect trademark owners, producers, distributors and the general public against injurious and uneconomic practices in the distribution of competitive commodities bearing a distinguishing trademark, brand or name". The act legalizes, so far as concerns Delaware law, "vertical price fixing", that is, agreements designed to insure that

retailers will not sell products with a trademark or brand for less than the minimum price stipulated by the seller in a contract with any retailer. The most important provision in the Act is the following:

> "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered pursuant to the provisions of this chapter, whether the person so advertising, offering for sale or selling is or is not a party to the contract, is unfair competition and is actionable at the suit of any person damaged thereby." 6 *Del.C.* § 1906.

■ This is the "non-signer" provision that the defendant asserts to be unconstitutional. The purpose of the provision is, of course, to subject to price maintenance those merchants who will not agree to it. It is vital to the accomplishment of the main purpose of the Act.[1]

The subject of retail price maintenance has for many years occupied the attention of Congress, of the State legislatures, and of the courts, and has been extensively discussed by economists. Beginning with the California Statute of 1931, *St.*1931, *p.* 583, amended in 1933, *St.*1933, *p.* 793, forty-five of the states have passed fair trade acts, all substantially similar in form. The non-signer provisions of the Illinois, *S.H.A.Ch.* 121½, § 190, and *California, St.*1933, *p.* 793, § 1½, Acts were attacked as unconstitutional, sustained by the Supreme Courts of those States,[2] and upheld by the Supreme Court of the United States. *Old Dearborn Distributing Co. v. Seagram-Distillers Corporation,* 1936, 299 *U.S.* 183, 57 *S.Ct.* 139, 81 *L.Ed.* 109, *The Pep Boys, etc. v. Pyroil Sales Co.,* 1936, 299 *U.S.* 198, 57 *S.Ct.*

---

1. "* * * without the clause, fair-trade contracts in any state would be meaningless, because the firms who precipitate price wars are the very ones who would not sign the fair-trade contract." *Report of Department of Commerce to the House Committee on Interstate and Foreign Commerce; Appendix to Report No.* 1437, 82d *Cong. 2d Sess.*

2. *Joseph Triner Corporation v. McNeil,* 363 Ill. 559, 2 N.E.2d 929, 104 A.L.R. 1435; *Seagram-Distillers Corporation v. Old Dearborn Distributing Company,* 363 Ill. 610, 2 N.E.2d 940; *Pyroil Sales Company, Inc. v. The Pep Boys, Manny, Moe & Jack of California,* 5 Cal.2d 784, 55 P.2d 194, 1186; *Max Factor & Co. v. Kunsman,* 5 Cal.2d 446, 55 P.2d 177.

147, 81 *L.Ed.* 122. In these cases it was contended that the statute was solely a price-fixing statute that denied the right of the owner of property to fix the price at which he would sell it, and hence denied due process of law. This contention was rejected.

Referring to its prior decisions holding invalid legislation that attempts to fix the prices at which the owner may sell his goods, the court distinguished the statutes before it on the ground that they did not deal with the sale of a commodity qua commodity but with a commodity identified by the trade-mark, brand, or name of the producer or owner. The court said:

> "The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trademark, brand, or name in accomplishing such disposition. The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself."

The court further observed that the retailing merchant owns the commodity he sells, but does not own the trade-mark or the good will that the mark symbolizes, and added:

> "And good will is property in a very real sense, injury to which, like injury to any other species of property is a proper subject for legislation."

Recognizing that price-fixing agreements in interstate transactions had been determined in the *Miles* case[3] to be obnoxious to the anti-trust laws, Congress in 1937 passed the Miller-Tydings Act, which exempted from such laws vertical price-fixing agreements relating to the resale of a commodity bearing the trade-mark, brand, or name of the producer. 50 *Stat.* 693, 15 *U.S.C.A.* § 1. This Act was held, however, not to affect non-signers of such agreements. *Schwegmann Brothers v. Calvert Distillers Corporation*, 341 *U.S.* 384, 71

---

3. *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 *U.S.* 373, 31 *S.Ct.* 376, 55 *L.Ed.* 502.

*S.Ct.* 745, 95 *L.Ed.* 1035. Congress thereafter passed the McGuire Act, which specifically withdraws from the ban of the Federal Trade Commission Act and the anti-trust acts any right of action created by the non-signer provisions of the Fair Trade Acts of the States. *Act of July* 14, 1952, 66 *Stat.* 632, 15 *U.S.C.A.* § 45.

The state fair trade acts thus appear to be immune from attack on federal grounds. It has been suggested that the decision in *Schwegmann Brothers v. Calvert Distillers Corporation, supra,* may lead to a re-examination by the Supreme Court of the United States of the reasoning in the *Old Dearborn* case, *supra;* but it seems clear that at the moment the federal law is as announced in *Old Dearborn.* *Eli Lilly & Co. v. Schwegmann Brothers Giant Super Markets, (D.C.)* 109 *F.Supp.* 269, *affirmed,* (5 *Cir.*) 205 *F.2d* 788, *certiorari denied* 346 *U.S.* 856, 74 *S.Ct.* 71.

The advocates of the acts have been almost as successful in the state courts. At least thirteen state courts of last resort have held the statutes consistent with due process of law. It is unnecessary to cite them all. See, for example, *Goldsmith v. Mead Johnson & Co.,* 1939, 176 *Md.* 682, 7 *A.2d* 176, 125 *A.L.R.* 1339; *Bourjois Sales Corporation v. Dorfman,* 1937, 273 *N.Y.* 167, 7 *N.E.2d* 30, 110 *A.L.R.* 1411; *Lionel Corporation v. Grayson-Robinson Stores, Inc.,* 15 *N.J.* 191, 104 *A.2d* 304. The highest courts of Michigan, Florida, and Georgia have held otherwise. *Shakespeare Co. v. Lippman's, etc., Co.,* 334 *Mich.* 109, 54 *N.W.2d* 268; *Liquor Store, Inc. v. Continental Distilling Corporation, Fla.,* 40 *So.2d* 371; *Grayson-Robinson Stores, Inc. v. Oneida, Ltd.,* 209 *Ga.* 613, 75 *S.E.2d* 161.

The decisions upholding the fair trade acts cite the *Old Dearborn* case, *supra,* and follow its reasoning. The acts are sustained as a reasonable exercise of the police power designed to protect the manufacturer's good will inhering in a trade-mark or brand, and to cure or lessen the evils believed to flow from price-cutting of trade-marked products.

The constitutionality of the Delaware Act has not heretofore been challenged on the ground of due process, although it has been twice before our courts on other points. *Klein v. National Pressure Cooker*

*Co.,* 1949, 31 *Del.Ch.* 459, 64 *A.2d* 529 (title of the act held sufficient though referring to "voluntary contracts" and not to non-signers) ; *Sunbeam Corporation v. Klein,* 32 *Del.Ch.* 65, 79 *A.2d* 603, 605 ("The purpose of Fair Trade Acts primarily is to protect the good will" of the manufacturer).

Defendant, tacitly conceding that the Fourteenth Amendment extends him no protection, invokes the provisions of the Constitution of Delaware, and asks this Court to re-examine the question of legislative power in the light of economic considerations.

The pertinent language of our *Constitution* is found in *Section 7 of Article* I providing that one shall not be "deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land". Although this section relates primarily to criminal proceedings, it has been applied also to civil cases, and the phrase "law of the land" has been held by our courts to have the same meaning as the phrase "due process of law" in the federal Constitution. *State v. Rose,* 3 *W.W.Harr.* (33 *Del.*) 168, 132 *A.* 864, 45 *A.L.R.* 85; *Ajax Distributors v. Springer,* 26 *Del.Ch.* 101, 22 *A.2d* 838, *affirmed* 26 *Del.Ch.* 445, 28 *A.2d* 309; *State v. Hobson,* 46 *Del.* 381, 83 *A.2d* 846.

It would seem to follow that in deciding a case of due process under our Constitution we should ordinarily submit our judgment to that of the highest court of the land, if the point at issue has been decided by that court. Such was the view of the New York Court of Appeals in the *Bourjois Sales* case, *supra.* In deference to the holding in the *Old Dearborn* case, *supra,* that court overruled its prior decision in the *Doubleday* case,[4] in which the non-signer provision of the *New York Fair Trade Act, Laws* 1935, *C.* 976, had been held to be unconstitutional. And cf. *Lionel Corporation v. Grayson-Robinson Stores, Inc., supra,* in which the Supreme Court of New Jersey said [15 *N.J.* 191, 104 *A.2d* 307] :

"Under the circumstances of this case the application of the New Jersey constitutional provision is governed by the construction and application afforded the 14th Amendment."

4. *Doubleday, Doran & Co. v. R. H. Macy & Co.,* 269 *N.Y.* 272, 199 *N.E.* 409, 103 *A.L.R.* 1325.

■ The doctrine of "substantive due process" in Delaware seems directly traceable to the evolution of that concept in the decisions of the Supreme Court of the United States. Cf. *State v. Allmond,* 2 *Houst.* 612, and *Mayor and Council v. Turk,* 14 *Del.Ch.* 392, 129 *A.* 512. It follows, therefore, that a litigant who asks our courts, in applying the "law of the land" clause, to disregard a direct ruling of the Supreme Court of the United States upon the same question arising under the Fourteenth Amendment, is carrying a heavy burden.

Defendant's argument against the validity of the non-signer provision of the *Fair Trade Act* runs as follows:

1. Resale price maintenance is economically unsound, because it tends to lessen retail competition and thus injures the general public— the consumer.

2. Resale price maintenance bears no relation to the protection of the good will of the manufacturer, who is interested only in selling as much of his product as he can; the legislative finding to the contrary has no reasonable basis and should be disregarded.

3. The statute is therefore nothing but a price-fixing law, having no reasonable relation to the public welfare, and is unconstitutional as depriving the owner of property—the retailer—of the right to dispose of his property as he sees fit.

In the light of these considerations, says defendant, this court should re-examine the reasoning of the *Old Dearborn* opinion, and should decline to follow it.

Now, it must be admitted that at first approach the argument has some appeal. Why should a retail merchant be required to sell his wares at prices fixed in a contract to which he is not a party? Why not give the consumer the benefit of lower prices? And how is the manufacturer's good will injured by making his product more readily available to the public?[5]

---

5. The apparent force of these objections has been recognized in some of the federal cases. See *Sunbeam Corporation v. Wentling,* 3 Cir., 192 *F.2d* 7; *Eli Lilly & Co. v. Schwegmann Bros. Giant Super Markets, supra;* and compare the language of the Supreme Court of the United States in the first *Schwegmann* case, *supra.*

·But upon examination it is found that these objections must depend for their validity upon the tacit assumption that resale price maintenance is so clearly unsound economically that a court can say without hesitation that the legislative findings to the contrary. have no reasonable basis to support them. Defendant recognizes this, for he devotes nearly half of his brief to an attempt to prove the correctness of this assumption by copious quotations from writings of professional economists who are opposed to resale price maintenance.

Now, this assumption is not correct. The economic soundness of retail price maintenance is not an open-and-shut question. It has been a subject of keen controversy for many years, and there are two schools of thought upon the matter. Before the passage of the Mc-Guire Act—to go back no further than 1951—the House Committee on Interstate and Foreign Commerce held extensive hearings upon the subject. A sharp cleavage of views developed. For example, the Federal Trade Commission opposed resale price maintenance; the Department of Commerce favored it, concluding that "the case against fair trade is more theoretical than real".[6] Again, the various aspects of the subject are reviewed in the majority and minority reports of the House Committee on the Judiciary on a bill to amend the Sherman Act,[7] in which the divergent views of the two schools of thought are set forth. One insists that resale price maintenance is bad for all—manufacturer, retailer and consumer; the other asserts that it is good for all.

It would serve no purpose to marshal the arguments pro and con. That is not our function. In these circumstances the duty of the court is plain. The question before us is not the wisdom of this legislation; it is whether the situation presents a reasonable necessity for the protection of the public welfare, and whether the means bear a reasonable relation to the end sought. *Gallegher v. Davis, 7 W.W. Harr.* (37 *Del.*) 380, 183 *A.* 620. And if these questions are fairly debatable, the legislative judgment must control. *State v. Hobson, supra.*

6. *Appendix to H.R.Report No.* 1437, *82nd Congress, 2d Session,* · upon *H.R.* 5767 (the proposed McGuire Act).

7. *H.R.Report No.* 1516, *82nd Congress, 2d Session.*

Not only are these questions "fairly debatable"; they have been warmly debated for years, and the debate, we gather, is still going on. The legislative judgment must therefore prevail.

We are of opinion that the non-signer provisions of the Delaware Fair Trade Act are constitutional.

Order answering the certified questions in accordance with the foregoing opinion.