THE UNITED STATES TIME CORPORATION *vs.*
ANN & HOPE FACTORY OUTLET, INC.

DECEMBER 3, 1964.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

504

JOSLIN, J. This is a bill in equity to enjoin the respondent from violating the "Fair trade act," G. L. 1956, chap. 12 of title 6. At the prior hearing the court was evenly divided. *United States Time Corp.* v. *Ann & Hope Factory Outlet, Inc.*, 97 R. I. 514, 199 A.2d 310. We were therefore unable to answer the questions of law certified by a justice of the superior court pursuant to G. L. 1956, §9-24-26, as being of such doubt and importance as to require determination by the supreme court before further proceedings were had in the superior court on the respondent's demurrer to the bill of complaint. The cause was heard before the full bench on rehearing, the request of the parties therefore having been granted.

The only question is the constitutionality of the fair trade act as applied to nonsigners of price maintenance contracts entered into pursuant to the act.

The bill alleges that complainant is in the business of manufacturing trademarked watches which are widely known and have acquired a good will which constitutes a valuable asset. It further alleges that notwithstanding respondent's knowledge that complainant had entered into fair trade contracts in this state with retailers dealing in its products, respondent wilfully and knowingly sold complainant's products at less than the stipulated minimum retail resale prices, and that such sales were not exempted from the resale price restrictions by virtue of §6-12-4.

In substance the demurrer avers that the fair trade act is null and void in that it violates certain provisions of the federal and state constitutions and is in restraint of trade contrary to the Sherman Anti-Trust Act, the Clayton Act and the federal Trade Commission Act. The decree for certification states the questions deemed of doubt and importance specifically as follows:

"Is the Rhode Island Fair Trade Act, so-called, General Laws of Rhode Island, 1956, Sec. 6-12-1 et seq., invalid in that:

"1. It is an unlawful delegation of legislative power in violation of Article III and Article IV, Sec. 1 and 2, of the Constitution of Rhode Island.

"2. It is an improper exercise of the police power of the state in that:

"(A) It is an exercise of the police power for private purposes or for the benefit of particular individuals or classes in violation of Article I, Sec. 2, of the Constitution of Rhode Island.

"(B) It is an attempt to prohibit competitive price cutting in a business not affected with a public interest in violation of Article I, Sec. 2, of the Constitution of Rhode Island.

"(C) It bears no relationship to the public health, safety, morals or general welfare.

"3. It deprives respondent of due process and equal protection of the law in violation of Amendment XIV, Sec. 1, of the Constitution of the United States.

"4. The fair trade contract is an illegal agreement in restraint of trade.

"5: It violates the Sherman Act, so-called, 15 U.S.C.A. Sec. 1 through 7.

"6. It violates the Clayton Act, 19 U.S.C.A. Art. 1, Sec. 10 [15 U.S.C.A. §12 et seq.].

"7. It violates the Federal Trade Commission Act, 15 U.S.C.A., Sec. 45 et seq.

"8. It violates Art. I, Sec. 5 of the Constitution of Rhode Island and further violates Article V, XVI, and XXIII of the Constitution of the State of Rhode Island.

"9. It violates Article I, Sec. 10 and Amendment V of the Constitution of the United States."

At the outset we note that notwithstanding the generality of the questions stated in the decree of certification, we construe them in the light of the factual situation as alleged in the bill of complaint.

We are uninfluenced by the economic and sociological pros and cons as to the desirability of minimum price resale contracts or of the act authorizing them and are unconcerned that the question of constitutionality comes before us in a time marked by prosperity whereas fair trade acts had their genesis in the depression days of the 1930's. The arguments founded on these considerations, and both parties advanced them, should be addressed to the legislature. It enacts and repeals statutes. We pass only on the legality of what it has done.

We limit our consideration to the questions which have been presented in certain form and which state separately the specific clauses of the federal or state constitution allegedly violated. *Brown* v. *Waldman*, 93 R. I. 489, 177 A.2d 179; *Haigh* v. *State Board of Hairdressing*, 74 R. I. 106. The references in paragraphs 8 and 9 to art. I, sec. 5, of the state constitution and to art. I, sec. 10, and Amendment V of the federal constitution do not meet the required standard. Paragraph 8 also refers to arts. XVI and XXIII

of the state constitution and is defective because there are no such articles. Article V of the state constitution adverted to in paragraph 8 is entitled "Of the House of Representatives" and is clearly inapposite. For the foregoing reasons we do not answer the questions propounded in paragraphs 8 and 9.

Fair trade acts have been enacted at one time or another in all but four of the states and have been construed by the courts of last resort in thirty-eight of them. The judicial box score as to the constitutional validity of nonsigner provisions is a constantly changing one. Illustrative is the action of the court of appeals in New York which found the act unconstitutional, *Doubleday, Doran & Co.* v. *R. H. Macy & Co.*, 269 N. Y. 272, and then reversed itself in *Bourjois Sales Corp.* v. *Dorfman,* 273 *N.* Y. 167. In Pennsylvania the reverse was the case. *Burche Co.* v. *General Electric Co.,* 382 Pa. 370; *Olin Mathieson Chemical Corp.* v. *White Cross Stores, Inc., No. 6,* 414 Pa. 95. In Ohio the court first found a constitutional violation and then upon amendment of the act ruled otherwise. *Union Carbide & Carbon Corp.* v. *Bargain Fair, Inc.,* 167 Ohio St. 182; *Hudson Distributors, Inc.* v. *Upjohn Co.,* 174 Ohio St. 487.

The weight of authority in favor of unconstitutionality, however, is more apparent than real. The constitutional provisions of the various states where the act has been considered in some instances differ from those in other states and from ours. For example, in Louisiana, *Dr. G. H. Tichenor Antiseptic Co.* v. *Schwegmann Bros. Giant Super Markets,* 231 La. 51, was premised on the civil law; in Montana and Utah, upon constitutional provisions against price fixing. *Union Carbide & Carbon Corp.* v. *Skaggs Drug Center, Inc.,* 139 Mont. 15; *General Electric Co.* v. *Thrifty Sales, Inc.,* 5 Utah 2d 326. These decisions, it is obvious, were premised on considerations not applicable in most other states or in this state.

The issue of whether constitutional requirements have

been met has been exhaustively discussed in the opinions as well as in the legal periodicals and law reviews. The authorities are collected at 2 CCH Trade Reg. Rep., ¶6000 et seq. and 60 A.L.R.2d 420, and it would add nothing to refer to each citation.

While decisions of the United States Supreme Court interpreting state constitutional provisions do not bind us, they merit more than ordinary consideration particularly when they pass on provisions such as the police power and the delegation of the legislative power, both provisions being common to the federal and our own constitutions. The state courts which have upheld the constitutionality of fair trade acts have relied principally, as do we, on *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, 299 U. S. 183. That opinion has stood the test of time. It was handed down in 1936 by the Hughes court, a court which not infrequently struck down legislative enactments as unconstitutional. It was reaffirmed this year in *Hudson Distributors, Inc. v. Eli Lilly & Co.*, 377 U. S. 386, by the Warren court, a court which has not been reluctant to overrule earlier decisions on constitutional issues.

## UNLAWFUL DELEGATION

The question raised in paragraph 1 relates to whether the act constitutes an unlawful delegation of the legislative power to private persons in violation of art. III and art. IV, secs. 1 and 2, of the state constitution.

A finding that the legislature has delegated its power must precede a finding that such delegation has been unlawful. In this respect, the court in *Old Dearborn* distinguished the case of a vendee purchasing with notice of price restrictions from the case of one purchasing without such notice. As to the former, it held that there had been no delegation; as to the latter, at least sub silentio, that there had been an unlawful delegation.

The rationale in *Old Dearborn* was that a nonsigner, going to the market place knowing that a commodity is fair traded and being under no compulsion to buy, assents by his purchase to the resale price restrictions and under principles of "fair dealing" becomes obligated to abide or in the alternative to suffer the consequences. "[T]he restriction, already imposed with the knowledge of appellants [vendees]," the court said at page 194, "ran with the acquisition and conditioned it." In substance, if not explicitly, the court found that in such circumstances there was an implied contract between wholesaler or producer on the one hand and retailer on the other.

A legislative authorization to the producer or wholesaler to restrict resale prices as against a reseller under no compulsion to buy and acquiring with notice of the restriction in respect of price is not an "unlawful delegation of power to private persons to control the disposition of the property of others * * *." *Old Dearborn* at page 194. Indeed it is no delegation at all because the act neither fixes prices nor delegates the price-fixing power to private persons. It does no more than permit "designated private persons to contract with respect thereto. It contains no element of compulsion but simply legalizes their acts, leaving them free to enter into the authorized contract or not as they may see fit." *Old Dearborn*, at page 192.

The same result has been reached in Ohio and Virginia under fair trade statutes providing substantially that a reseller acquiring a fair-traded commodity with notice of a price restriction is deemed to have entered into an agreement not to resell below the stipulated price. *Hudson Distributors, Inc.* v. *Upjohn Co.*, 174 Ohio St. 487; *Standard Drug Co.* v. *General Electric Co.*, 202 Va. 367. We reach that conclusion on the authority of *Old Dearborn* without the benefit of an express statutory crutch.

What we have said as to a nonsigner acquiring a product with notice that it has been fair traded obviously has

510

no application where the acquisition precedes notice of the resale price restriction. In the latter circumstances since the restriction does not arise from a contract either express or implied, the legislature is without power to delegate to a private person the power to fix prices.

In the posture in which this case comes before us we are unable to answer categorically the question propounded in paragraph 1. It is alleged in paragraph 11 of the bill of complaint that respondent "had at all time pertinent hereto actual notice of the existence of Complainant's fair trade program." Since the time of acquisition is in our view both the pertinent and the critical time, our answer to the question must be in the alternative. In doing so we observe that under §6-12-8 the invalidity of the application of the act as to any person or circumstances does not affect its validity as applied to other persons or circumstances.

We answer the question propounded in paragraph 1 as follows: That the fair trade act, §6-12-1 et seq., (a) is not an unlawful delegation of the legislative power in violation of art. III and art. IV, secs. 1 and 2, of the state constitution as applied to a reseller who purchases with actual notice of a stipulated minimum resale price imposed pursuant to such act, and (b) is an unlawful delegation of that power in violation of those constitutional provisions as applied to a reseller who purchases without actual notice of such stipulated minimum resale price.

## POLICE POWER

Paragraph 2 asks us to determine whether the act constitutes an unreasonable exercise of the police power under art. I, sec. 2, of the state constitution which reads as follows: "All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole * * *."

The term "police power" is not easily defined. *Amitrano v. Barbaro*, 61 R. I. 424; *Creditors' Service Corp.* v. *Cum-*

*mings,* 57 R. I. 291. The general and discretionary language is directory and imposes restraints on the legislative law-making power. *In the Matter of Dorrance-Street,* 4 R. I. 230. Neither the power to make laws for the good of the whole nor the restraints are without limitation. *State* v. *Campbell,* 95 R. I. 370, 187 A.2d 543; *Opinion to the Governor,* 75 R. I. 54. When a question arises as to whether the legislature has exceeded the bounds, the test is not whether the enactment was wise, fair or desirable, but whether it bears a legitimate or substantial relation to the public health, safety, morals or general welfare. *Amitrano* v. *Barbara, supra; Prata Undertaking Co.* v. *State Board of Embalming & Funeral Directing,* 55 R. I. 454. When it does, it is within the legitimate exercise of the police power and therefore valid.

In the fair trade act as applied to this cause, the legislative concern was with the protection of complainant's trademark. In that mark complainant had a property right. That right was good will and it constituted a valuable asset acquired only after a substantial expenditure. The complainant retained its ownership of that property right notwithstanding the sale to respondent of the product to which it is attached. See *Sayles Biltmore Bleacheries Inc.* v. *Narragansett Wiping Supply Co.,* 86 R. I. 99. The legislative policy was to protect that good will. The vehicle selected to accomplish that purpose was to endow complainant with the power to prevent the sale of its products plus its good will by respondent at prices of its own selection. Courts afford relief against those who exploit the good will or trademark of another, and it is within the legislative domain to provide for protection. As far as the act goes, it contains nothing which would prevent respondent from severing the good will from the product and then disposing of the latter at a price below the stipulated minimum resale price.

In determining whether the act is or is not constitutional, the questions for determination are whether the legislative

plan bears a necessary relation to the general welfare and whether the means adopted by the legislature were necessary to the accomplishment of the end. *Creditors' Service Corp.* v. *Cummings, supra.* Or stated in the negative, is the legislative plan so arbitrary, oppressive and capricious as to be without substantial relation to the general welfare of the public. *Prata Undertaking Co.* v. *State Board of Embalming & Funeral Directing, supra.*

There is no legal litmus to provide the answers. It may be said, however, that the enactment is not arbitrary, oppressive or capricious if the questions are fairly debatable and are such that different minds might fairly and reasonably reach different conclusions thereon. Relying again on *Old Dearborn,* the court said at page 195:

> "There is a great body of fact and opinion tending to show that price cutting by retail dealers is not only injurious to the good will and business of the producer and distributor of identified goods, but injurious to the general public as well. The evidence to that effect is voluminous; but it would serve no useful purpose to review the evidence or to enlarge further upon the subject. True, there is evidence, opinion and argument to the contrary; but it does not concern us to determine where the weight lies. We need say no more than that the question may be regarded as fairly open to differences of opinion. The legislation here in question proceeds upon the former and not the latter view; and the legislative determination in that respect, in the circumstances here disclosed, is conclusive so far as this court is concerned. Where the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the legislature."

More succinctly perhaps, but nonetheless to the same effect, the supreme court of Delaware in determining whether there was but one answer to the questions or whether they were fairly debatable said in *General Electric Co.* v. *Klein,* 34 Del. Ch. 491, 500: "Not only are these questions 'fairly debatable'; they have been warmly debated for

years, and the debate, we gather, is still going on. The legislative judgment must therefore prevail."

In our opinion it was within the police power of the legislature to enact the fair trade act and our answers to the questions propounded in paragraph 2 are in the negative.

## FEDERAL QUESTIONS

Finally, we come to the questions raised in paragraphs 3 to 7 inclusive. These relate to the federal constitution and acts of Congress. In this area the decisions of the United States Supreme Court are binding on us. *Rivard* v. *Bijou Furniture Co.*, 67 R. I. 251; *Jenckes Spinning Co.* v. *N. Y., N. H. & H. R. R.*, 47 R. I. 72. In *Hudson Distributors, Inc.* v. *Eli Lilly & Co., supra*, the United States Supreme Court resolved whatever doubts *Schwegmann Bros.* v. *Calvert Distillers Corp.*, 341 U. S. 384, and the passage of twenty-eight years may have cast on *Old Dearborn, supra.* It is now settled that neither the federal constitution nor any congressional enactment prohibits a trademark owner from enforcing, pursuant to a state fair trade act, stipulated minimum resale prices established by written contract as against nonsigners as well as signers. The questions propounded in paragraphs 3 to 7 inclusive we answer in the negative.

The papers in the case with our answers to the questions certified are remitted to the superior court for further proceedings.

CONDON, C. J., dissenting. I dissent for the following reasons. On the view that I take of the questions propounded in paragraphs 1 and 2 it will not be necessary to consider paragraphs 3, 4, 5, 6 and 7. With reference to paragraph 1, respondent contends that the fair trade act is an unlawful delegation of legislative power to private persons in violation of art. III and art. IV, secs. 1 and 2, of the state constitution. And as to the questions raised by paragraph 2, it contends that the act is an unreasonable exercise of the police power and therefore invalid.

There is in my opinion merit in each of those contentions insofar as they are restricted to that portion of the act, frequently referred to as the nonsigner provision, which makes liable to a suit for damages any person whether a party to a fair trade contract or not who wilfully and knowingly advertises, offers for sale or sells any commodity at less than the price stipulated in any such contract. G. L. 1956, §6-12-5. In the case at bar respondent is alleged to have violated that section and therefore the validity thereof is the only question of doubt and importance that may be properly certified for our determination. The question is stated more broadly in the decree of certification but in their briefs and oral arguments before us the parties have confined their respective contentions, as they should, only to the question of the constitutional validity of the nonsigner provision of the act. I shall hereinafter likewise confine my discussion to that question.

In my opinion chap. 12 of title 6 although entitled a fair trade act is in reality a price-fixing statute. The fundamental objective of the act is to make lawful that which would otherwise be unlawful. Thus §6-12-5 purports to confer authority upon a private person to fix the price at which his product may be resold in the ordinary course of trade by one who has purchased it without any contractual arrangement with the producer as to such resale price. The legislative act does not itself fix the price. In that respect the act is incomplete. Until the producer fixes the price by contract with at least one purchaser there is no law which binds a purchaser of the product against reselling it at any price he chooses.

In other words there remains one more legislative step to be taken and this the legislature has delegated to the producer, namely, the plenary power to act or not act in any manner he sees fit. More than that, if and when he acts and fixes a price he may at any time thereafter alter or repeal such price without obtaining further legislative

permission. Obviously the net effect of all this is to give the producer carte blanche to enact his own price law according to his arbitrary whim or caprice. The legislature thus makes the existence of its legislative enactment as a binding law dependent upon the will of another. This it cannot constitutionally do. "The General Assembly can not call to their aid any other body, and make the existence of a law depend, in whole or in part, upon the will of such other body." *State* v. *Copeland,* 3 R. I. 33, 35.

In *Copeland* the statute authorized the legal voters to vote on the question of repealing a certain legislative act. The vote was against repeal. Copeland when prosecuted for violating the act contended that the reference to the voters rendered it invalid as an unlawful delegation of legislative power. But since the vote was against repeal it was held that the act remained in full force and effect as it was before the referendum. However, the court pointed out that had the vote gone the other way "a question might then have been raised whether the law were not still in force, whether an act which had been constitutionally passed and put in force by the General Assembly could be repealed by the acts, or at the will of any other body."

In those states where the nonsigner provision has been attacked on this particular ground there is a marked division of authority. In the earliest case which has come to my attention the New York Court of Appeals in an opinion by Chief Judge Crane unanimously held such a provision was an unconstitutional delegation of price-fixing power. *Doubleday, Doran & Co.* v. *R. H. Macy & Co.,* 269 N. Y. 272. To fix arbitrarily the price of books by legislation and not by agreement, the court said, "comes within the condemnation of the decisions which have heretofore dealt with like legislation. What the Legislature cannot do directly it cannot do indirectly nor does it cease to be a price fixed by the Legislature because that body has clothed the publisher with the power or authority to establish it. For a pub-

lisher to agree with its subsidiary or agent to the price of a book which shall thereafter bind all other parties who purchase like books from the publisher is in reality a method whereby the Legislature fixes the price; it is a species of delegated authority."

*Doubleday* was decided January 7, 1936. Subsequently on June 17, 1936 the Illinois supreme court came to a contrary conclusion and upheld a similar provision in its fair trade act. *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.*, 363 Ill. 610. On appeal to the United States Supreme Court that holding was affirmed on federal grounds and the court also took occasion to say that in its opinion the nonsigner provision was not an unconstitutional delegation of legislative power. *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183 (October term 1936).

Thereafter the question again came before the New York Court of Appeals in *Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167. Out of deference to the United States Supreme Court and in accordance with a long-established policy of its own, the court of appeals speaking again through Chief Judge Crane overruled *Doubleday, Doran & Co.* v. *R. H. Macy & Co.* and sustained the nonsigner provision. In doing so, however, it did not advance any reason contra to its holding in *Doubleday* that the provision was an unconstitutional delegation of legislative power.

*Bourjois* was decided on March 9, 1937. Since then that decision has been reaffirmed in a series of cases, the most recent being *General Electric Co.* v. *Masters, Inc.*, 307 N. Y. 229, decided in June 1954. New York is therefore listed among the states in which its court of last resort has upheld the nonsigner provision as constitutional. But as I read the later opinions I am unable to find anything therein tending to refute the soundness of the reasoning in *Doubleday* that the nonsigner provision was an unconstitutional delegation of legislative price-fixing power. Only a fixed

policy of deferring to the United States Supreme Court prompted the New York Court of Appeals to reverse its own well-reasoned position. This court has no such fixed policy. Where a federal question is not involved we accord the opinions of the United States Supreme Court the highest consideration but we do not deem them necessarily controlling.

However, after *Old Dearborn* was handed down, an increasing number of state courts of last resort following the example of the New York Court of Appeals accepted it as a persuasive precedent and for a time it appeared that the weight of authority favored the view that the nonsigner provision as well as the rest of the fair trade act was constitutional. This trend continued through the depressed thirties and war-ravaged forties. But thereafter beginning about 1950 a pronounced change to the contrary set it. More and more state courts upon examining the problem with greater care, and free from the pervasive influence of the winds of new economic and social doctrines that blew so strongly through the thirties, definitely declared the nonsigner provision unconstitutional; some because it violated due process or was an unreasonable exercise of the police power, and some because it was an unconstitutional delegation of legislative power.

As of the present writing it would appear that the weight of authority now supports this later view. It would needlessly lengthen this opinion to enumerate the cases here since they are cited in full in *Bulova Watch Co.* v. *Zale Jewelry Co.,* Wyo., 371 P.2d 409, 413, decided May 8, 1962. Of the cases cited as holding the nonsigner provision unconstitutional the following declared it an unlawful delegation of legislative power: *Olin Mathieson Chemical Corp.* v. *White Cross Stores, Inc., No. 6,* 414 Pa. 95; *Bulova Watch Co.* v. *Robinson Wholesale Co.,* 252 Iowa 740; *Remington Arms Co.* v. *G.E.M. of St. Louis, Inc.,* 257 Minn. 562: *Union Carbide & Carbon Corp.* v. *Bargain Fair, Inc.,* 167 Ohio St.

182; *Bissell Carpet Sweeper Co.* v. *Shane Co.,* 237 Ind. 188; *Olin Mathieson Chemical Corp.* v. *Francis,* 134 Colo. 160; *General Electric Co.* v. *Wahle,* 207 Ore. 302.

In the last-cited case the Oregon supreme court, referring to the absence of an agreement by the nonsigners, said at page 328: " 'This leaves wholly to persons outside of the legislature the power to determine whether there shall be a law at all and, if there is to be a law, what the terms of that law shall be. *It is impossible to conceive of a more complete delegation of legislative power* \* \* \*.' " In a separate concurring opinion Lusk, J., declared at page 336: "The fact that the commodities are identified by a trade-mark, brand, or the name of the owner or distributor, is irrelevant to the present question. It is none the less price fixing, determined not by the legislature itself, nor by a board or commission acting under legislative authority, but by private individuals."

In *Olin Mathieson Chemical Corp.* v. *Francis, supra,* the Colorado supreme court said at page 172: "The General Assembly itself has no power to fix the prices of merchandise sold on the open market, it follows that it cannot lawfully delegate such authority to another, who may at his election, alter such resale price according to his personal whim or caprice and for his own benefit. Except under the police power in a proper case, no right reposes in the General Assembly to fix prices at which an owner of property shall sell that which he owns and offers to sell."

Those declarations of the Oregon and Colorado courts are quoted at some length because they are illustrative of the well-considered views of all the courts which have held the nonsigner provision to be an unlawful delegation of legislative power. Many more could be quoted which pursue the same line of reasoning but to avoid extending this opinion to unnecessary length I refrain from further quotation and refer the reader to the cases hereinabove cited. It is sufficient to say that in my opinion they are in keeping with the

general principle enunciated by this court in *State* v. *Copeland, supra,* and therefore they may with good warrant be cited as authorities. Hence, I would answer the question propounded in paragraph 1 as follows: That portion of §6-12-5 referred to as the nonsigner provision is invalid in that it is an unlawful delegation of legislative power in violation of art. III and art. IV, secs. 1 and 2, of the state constitution.

Since I have already stated that the fair trade act regardless of its title is in reality a price-fixing statute, it will not be necessary to prolong this opinion in answering the question propounded in paragraph 2. Insofar as the nonsigner provision is concerned, the act is clearly an unreasonable exercise of the police power. *Shakespeare Co.* v. *Lippman's Tool Shop Sporting Goods Co.,* 334 Mich. 109; *Skaggs Drug Center* v. *General Electric Co.,* 63 N.M. 215; *Bissell Carpet Sweeper Co.* v. *Shane Co.,* 237 Ind. 188.

In the last cited case at page 199 the court said: "The General Assembly has no right to abdicate its legislative power to private persons, nor could it even delegate to a governmental agency the power to find what might be a reasonable price without proper safeguards and procedural due process." And in a separate concurring opinion three other members of the court took occasion to emphasize that even then it must clearly appear that the business in which prices were thus fixed was affected with a public interest.

It is too obvious for further discussion that in the case at bar there is not the slightest suggestion of such a public interest. As the Michigan court said in *Shakespeare Co.* v. *Lippman's Tool Shop Sporting Goods Co., supra,* the nonsigner provision was "outside the scope of the police power of the State inasmuch as it bore no reasonable relation to public morals, health, safety or the general welfare." To the same effect are *Skaggs Drug Center* v. *General Electric Co., supra,* and *Cox* v. *General Electric Co.,* 211 Ga. 286.

With such views I concur and hence I would answer the question propounded in paragraph 2 as follows: That portion of §6-12-5 known as the nonsigner provision is in-. valid in that it is an improper and unreasonable exercise of the police power in violation of art. I, sec. 2, of the state constitution.

POWERS, J., concurs in the dissenting opinion of Condon, C.J.

*Factor, Chernick & Hillman, William C. Hillman; Needham, Silverstein & Shatkin, Thomas N. Needham; Seifert Rothwell & Mandell, Thomas A. Rothwell* (New York), amici curiae, for complainant.

*Abedon & Abedon, Herbert J. Abedon, Bernard B. Abedon; Levy, Carroll, Jacobs & Kelly, Daniel Jacobs,* amicus curiae, for respondent.