325 P.2d 394

**GENERAL ELECTRIC COMPANY,**
Appellant,

v.

**TELCO SUPPLY, Inc., Appellee.**

No. 6387.

Supreme Court of Arizona.
May 7, 1958.

· George Welch, Jr., Phoenix, amicus curiae.

PHELPS, Justice.

This is an appeal from a judgment of the trial court declaring unconstitutional the Arizona Fair Trade Act of 1936, being A.R.S. §§ 44-1421 to 44-1424 inclusive.

The facts are that General Electric Company, a corporation, hereinafter designated as plaintiff, brought an action against Telco Supply, Inc., a corporation, hereinafter designated as defendant, seeking to enjoin it from selling commodities produced by plaintiff at prices less than those stipulated in contracts plaintiff had with other Arizona retail dealers which plaintiff claimed was in violation of the Arizona Fair Trade Act. Plaintiff had contracts with a number of retail merchants in Arizona who handled its products fixing a minimum price at which such products bearing its trademark or brand name, "General (GE) Electric", were permitted to be sold. Defendant is a "non-signer" or, in other words, it had not entered into such an agreement with plaintiff.

Defendant raised in its pleadings the constitutionality of the Fair Trade Act and specifically alleged that said act violates numerous provisions of the federal and state constitutions as hereinafter enumerated. The court denied defendant's motion to dismiss the complaint based upon the

Kramer, Roche & Perry, and Raymond Huffsteter, for appellant, D. E. Bamford, Bridgeport, Conn., of counsel.

ground that the Fair Trade Act was unconstitutional. The cause was tried to the court without a jury. At the close of all of the evidence on June 18, plaintiff moved for an interlocutory injunction and for judgment. After argument the matter was taken under advisement. On October 19 further argument was had, and on October 30 judgment was entered in favor of defendant declaring the Arizona Fair Trade Act unconstitutional.

On appeal plaintiff has assigned but one error: that the court erred in awarding defendant judgment based upon the ground that the Fair Trade Act is unconstitutional. It asserts that the act is constitutional and that all of the allegations in the complaint were admitted by the defendant or proved by uncontradicted evidence. Defendant filed no brief on appeal but we have the benefit of a brief of amicus curiae in support of the ruling of the trial court.

The legislatures of forty-five states have adopted fair trade acts which differ but slightly from their Arizona counterpart, and the courts of some thirty odd states are almost equally divided on the question of their constitutionality. We will quote only the pertinent portions of the Arizona act. A.R.S. § 44–1422, subsection A, provides that:

"No contract relating to the sale or resale of a commodity which bears the trade-mark, brand or name of the ·producer or owner of the commodity, or the label or container of which bears such trade-mark, brand or name, and which is in fair and open competition with commodities of the same general class produced by others shall be deemed to violate any law of the state by reason of any of the following provisions which may be contained in the contract:

"1. That the buyer will not resell such commodity except at the price stipulated by the vendor.

"2. That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee."

There are certain transactions exempted from the above provisions not material in the instant case. A.R.S. § 44–1423 provides that:

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of § 44–1422, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition upon which an action may be brought by any person damaged thereby."

There are no factual issues presented. We will therefore proceed to a considera-

tion of the constitutional questions raised. It is first urged that the act violates the provisions of art. 14, § 15 of the Arizona Constitution which provides that:

"Monopolies and trusts shall never be allowed in this State and no incorporated company, co-partnership or association of persons in this State shall directly or indirectly combine or make any contract, with any incorporated company, foreign or domestic, through their stockholders or the trustees or assigns of such stockholders or with any co-partnership or association of persons, or, in any manner whatever, to fix the prices, limit the production, or regulate the transportation of any product or commodity. The Legislature shall enact laws for the enforcement of this Section by adequate penalties, and in the case of incorporated companies, if necessary for that purpose, may, as a penalty declare a forfeiture of their franchises."

We have frequently held that every intendment is in favor of the constitutionality of a statute, and that before it may be stricken down, the court must be satisfied beyond a reasonable doubt that it is unconstitutional. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808; Black & White Taxicab Co. v. Standard Oil Co., 25 Ariz. 381, 218 P. 139. With this principle in mind let us place the Fair Trade Act beside the above constitutional provisions and determine whether the act contravenes said constitutional provision. The constitutional provision must be interpreted by ascertaining the intent of its framers. What was its purpose? Clearly it was to prevent monopolies and trusts. We are concerned here only with monopolies.

An exclusive privilege or right is indispensable to the existence of a monopoly. Its primary characteristic is to stifle competition so as to give to a person, association, corporation or combination thereof the control over prices of the commodity sought to be monopolized. Conley v. Daughters of Republic of Texas, Tex.Civ. App., 151 S.W. 877, 883. In Miles Laboratories, Inc. v. Owl Drug Co., 67 S.D. 523, 295 N.W. 292, the court said:

"A monopoly such as is meant by Section 20 of Art. 17 of our Constitution [which is identical with Art. 14 § 15 of the Arizona Constitution] exists only where all or so nearly all of a product or commodity within a community or district is brought into the hands of one man or set of men, as to practically bring the handling or production of the commodity within such single control, to the exclusion of competition or free traffic therein."

Again, as in the interpretation of the constitution, we look to the intent of the legislature in interpreting a statute. A cursory examination of the above quota-

tion must convince the reader that the act here involved cannot possibly be construed as creating a monopoly. It not only does not stifle or prohibit competition, but expressly provides that the act cannot become operative unless the commodity involved is in free and open competition with commodities of the same general class produced by others. The classification of the commodities affected are perfectly legitimate and have a reasonable relation to the object of the legislation. The act clearly is designed to protect the brand, name or trade-mark of a producer. It is in no sense of the word a price fixing law. It does not in any degree violate the provisions of art. 14, § 15 of the Arizona Constitution.

■ There is likewise no merit to the claim that failure to set forth at full length the provisions of the Revised Code Arizona 1928, § 3212, relating to trusts, combinations, and trade practices as violative of art. 4, pt. 2 § 14 of the Arizona Constitution which provides that:

"No Act or section thereof shall be revised or amended by mere reference to the title of such Act, but the Act, or section as amended shall be set forth and published at full length."

It is the law of this state that where an act is complete in itself, although incidentally repealing a prior act, it is valid without setting forth such prior statute and does not fall within the prohibitions of art. 4, pt. 2 § 14 of the Arizona Constitution. State Tax Commission v. Shattuck, 44 Ariz. 379, 38 P.2d 631; Mosher v. City of Phoenix, 39 Ariz. 470, 7 P.2d 622. The Fair Trade Act is complete in itself and falls within the rule laid down in State Tax Commission v. Shattuck, supra, and Mosher v. City of Phoenix, supra.

■ The pleadings also allege that the title to the act is defective in that there is more than one subject expressed in it. Art. 4, pt. 2 § 13 of the Arizona Constitution relating thereto provides as follows:

"Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title."

We believe the title does nothing more than comply with the rule that it must fairly set forth the subject of the legislation with sufficient clearness to give notice of the legislative intent as expressed in the act itself and is consistent with the rule that the title to a legislative act need not index the entire measure. See In re Lewkowitz, 69 Ariz. 347, 213 P.2d 690.

The brief of amicus curiae did not touch upon any of the questions discussed above except the question of whether the act

created a monopoly. Therefore, we could have omitted any discussion of all of said questions except as to monopolies. But inasmuch as counsel for plaintiff devoted considerable space to a discussion thereof, we thought it proper to determine all questions concerning the constitutionality of the act at this time.

The answer alleges a violation of the 5th amendment and section 1 of the 14th amendment to the federal constitution, and also, a violation of art. 2 §§ 4 and 13 of the state constitution. These provisions, both state and federal, are designed to guarantee to all citizens due process of law and the equal protection of the law and are discussed at length in the brief of amicus curiae. We believe, however, that insofar as the 5th and 14th amendments of the federal constitution relating to "due process" and "equal protection of the law" are concerned the case of Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, has fully, *and to this date finally,* determined the question.

We are not unaware of the views of other courts and especially the Nebraska Supreme Court in the case of McGraw Electric Co. v. Lewis & Smith Drug Co., 159 Neb. 703, 68 N.W.2d 608, to the effect that the Dearborn case was determined upon other than constitutional grounds, but with that view we do not agree. It is true that Mr. Justice Sutherland, in writing the unanimous opinion for the Court in the Old Dearborn case, did discuss the position of the Court relative to legislation upon matters affecting public policy based upon facts which are debatable and say that under such circumstances the courts would not intervene to determine where the weight lies or consider the wisdom of such legislation. However, in construing the Illinois Fair Trade Act, S.H.A. ch. 121½, § 188 et seq. (which, insofar as here material, is practically identical with ours) he said, in substance, that there was a wide divergence of opinion on the question of whether price cutting by retail dealers injures, not only the good will and business of the producer of identified goods, but the public as well. He said, however, that whether it does or not, the question was a fairly debatable one and therefore a matter for legislative determination. Then the Court, as it had to do, went forward to determine: the question of the constitutionality of the Illinois Fair Trade Act; whether the legislation was reasonable and not arbitrary; whether it was or was not a price fixing law; whether it constituted an unlawful delegation of power to a private person or persons to control the disposition of property of others; etc. In so doing the Court expressly held that the Illinois Fair Trade Act was not "so arbitrary, unfair or wanting in reason as to result in a denial of due process." [299 U.S. 183, 57 S.Ct. 145.]

It further expressly held that the Illinois Fair Trade Act was dealing not with a commodity alone, but with a commodity plus the brand or trade-mark. The purchaser of the commodity, the Court in effect said, does not own the trade-mark or good will that the mark symbolizes, and that good will is property in a very real sense, injury to which, like injury to any other species of property, is a proper subject for legislation.

With respect to the right of the legislature to declare the economic policy of the state reasonably deemed to promote the general welfare and the lack of power of the courts to interfere therewith, we said in State of Arizona v. Walgreen Drug Co., 57 Ariz. 308, 113 P.2d 650, in considering the constitutionality of the Unfair Sales Act of this state, that we approved language used in Nebbia v. People of State of New York, 291 U.S. 502, at page 537, 54 S.Ct. 505, at page 516, 78 L.Ed. 940, which reads as follows:

" * * * [A] state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. * * * With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal."

In General Electric Co. v. Klein, Del., 106 A.2d 206, 211 in discussing the constitutionality of the non-signer clause of the Delaware Fair Trade Act, the court said:

" * * * The question before us is not the wisdom of this legislation; it is whether the situation presents a reasonable necessity for the protection of the public welfare, and whether the means bear a reasonable relation to the end sought. * * * And if these questions are fairly debatable, the legislative judgment must control."

However, it is clearly pointed out in the Old Dearborn case, supra, that it was the right of the producer of a commodity bearing its trade-mark or brand name to protect its property right in the good will of its business and that distinctive trade-marks, labels and brands are legitimate aids to the creation or enlargement of such good will. It is further made clear that in such a statute the legislature is dealing with something more than the commodity itself; it is dealing also with a trade-mark. It is further pointed out that the statute does not prohibit the retailer from removing the trade-mark from an article and selling it as an unidentified commodity at any price he desires.

In discussing section 2 of the Illinois Fair Trade Act, the Court further said in

the Old Dearborn case that section 2 of the act relating to a non-signer of a contract with the producer or owner:

" * * * reaches not the *mere* advertising, offering for sale, or selling at less than the stipulated price, but the doing of any of these things *willfully* and *knowingly*. We are not called upon to determine the case of one who has made his purchase in ignorance of the contractual restriction upon the selling price, but of a purchaser who has had definite information respecting such contractual restriction and who, with such knowledge, nevertheless proceeds willfully to resell in disregard of it.

" * * * section 2 does not deal with the restriction upon the sale of the commodity *qua* commodity, but with that restriction because the commodity is identified by the trade-mark, brand, or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand, or name in accomplishing such disposition. The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself."

The opinion further reads:

" * * * As this court many times has said, the equal protection clause [14th amendment] does not preclude the states from resorting to classification for the purposes of legislation. It only requires that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' "

The Court then concluded that the Illinois Fair Trade Act did not violate the equal protection clause of the 14th amendment; that the act was not a price fixing act; and that there is nothing in it to jusify the claim that it is a delegation of authority to any one to control the disposition of property of others.

The case of Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, cited and relied upon by amicus curiae, as we read it, in nowise affected the conclusion reached in the Old Dearborn case as to the constitutionality of the Illinois Fair Trade Act under the 5th and 14th amendments. The Schwegmann case was based squarely upon the effect of the Miller-Tydings Act in amending the Sherman Anti-Trust Act, 15 U.S. C.A. §§ 1–7, 15 note. The Court in that case held that the Miller-Tydings Act in

amending the Sherman Anti-Trust Act only brought within its scope, as being exempt from the act, voluntary agreements between a producer or owner and a retail dealer whose business is in a state having a fair trade act which authorizes agreements between producers or owners and retailers fixing a minimum price for which a trade-marked commodity may be sold, and that a non-signer of such a contract was not thereby exempt from the operation of the Sherman Anti-Trust Act. The McGuire Act enacted in 1952 again amended the Sherman Anti-Trust Act by exempting non-signers of such contracts from its operation. We are therefore not concerned with the Schwegmann case because the Sherman Anti-Trust Act is not involved here. That the Old Dearborn case still controls on the question of the constitutionality of the Fair Trade Act in Arizona under the provisions of the 5th and 14th amendments to the federal constitution was asserted in 1953 in Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 5 Cir., 205 F.2d 788, certiorari denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369; rehearing denied 346 U.S. 905, 74 S.Ct. 217, 98 L.Ed. 404.

■ The Arizona Constitution in Art. 2, §§ 4 and 13 contains the same guarantees as the 5th and 14 amendments to the United States Constitution, and we therefore hold that the Fair Trade Act of Arizona does not violate those provisions. We find no merit whatever in the suggestion that the act violates the provisions relating to interstate commerce and the supremacy clause (the second clause of Article 6) of the federal constitution. The McGuire Amendment to the Sherman Anti-Trust Act expressly provides that the enforcement of the fair trade acts of the states as it relates to non-signers shall not constitute an unlawful burden or restraint upon or interference with commerce. There is no conflict between the Arizona Fair Trade Act and any federal law. Therefore, there is no aspect of the supremacy of laws involved in this case.

■ Furthermore, we are not impressed with the argument that because the Arizona Fair Trade Act came into existence during the depression of the 1930's it is now invalid. It is a sufficient answer to observe that the act was re-enacted in 1956 in the Arizona Revised Statutes. Its enactment was and is a proper exercise of the police power of the state in the establishment of a public policy relating to the economy and public welfare of the state. Whether the nation is in the midst of a depression or an era of prosperity, the principle involved is the same.

We therefore hold that the Arizona Fair Trade Act, A.R.S. §§ 44–1421 to 44–1424 inclusive, is constitutional.

Judgment of the trial court is reversed and remanded with directions to render judgment not inconsistent with this decision.

UDALL, C. J., and WINDES, STRUCKMEYER and JOHNSON, JJ., concur.