Merrimack,
No. 4837.

CORNING GLASS WORKS

*v.*

MAX DICHTER COMPANY, INC.
AND MAN-BUR SALES, INC.

Argued May, 4, 1960.

Decided May 31, 1960.

508

*Devine, Millimet & McDonough (Mr. Shane Devine orally),* for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters (Mr. Langdell orally),* and *Walter D. Ford* (of Delaware) for E. I. duPont de Nemours & Company as *amicus curiae.*

*McLane, Carleton, Graf, Greene & Brown (Mr. Greene orally),* for the defendants.

BLANDIN, J. I. The first issue before us is whether our Fair Trade Law (RSA ch. 357) violates the due process clause of our Constitution, Pt. I, *Art.* 15th.

The Law provides in substance that no contract which relates to the sale or resale of a commodity bearing a trademark or the producer's name and which is in "fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state" because the contract contains provisions "that the buyer will not resell such

commodity at less than the minimum price stipulated by the vendor; that the producer or vendee . . . require upon the sale of such commodity to another" that the purchaser agree he will not resell it "at less than the minimum price stipulated by such producer or vendee." RSA 357:1.

Section 2 of the same Law provides that anyone who "wilfully and knowingly" sells or advertises such commodity at less than the stipulated price is engaged in unfair competition whether he is or is not a party to the contract, and "any person" injured thereby may bring an action. It is further provided that "any person" may maintain proceedings for an injunction to restrain violations of this Law without alleging or proving actual damages. RSA 357:4.

Pt. I, *Art.* 15th of the Constitution of this state, so far as pertinent, reads as follows: "And no subject shall be . . . deprived of his property . . . but by the judgment of his peers, or the law of the land." The phrase "law of the land" is synonymous with due process of law. *Opinion of the Justices,* 66 N. H. 629, 633.

In 1903, our Constitution was revised so that Pt. II, *Art.* 83 gave to the Legislature the right to protect "free and fair competition in the trades and industries" against monopolies "or any other unfair means." The avowed purpose of RSA ch. 357, originally enacted in 1937 is to protect "trademark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a trade-mark, brand or name." Laws 1937, *c.* 184. While the announced purpose is not conclusive, it is nevertheless entitled to weight. *McIntire* v. *Borofsky,* 95 N. H. 174, 178; *Velishka* v. *Nashua,* 99 N. H. 161, 165.

The defendants, in their claim that the Law is unconstitutional, are faced at the outset with the proposition that we should not declare it so except upon "unescapable grounds." *Musgrove* v. *Parker,* 84 N. H. 550, 551. Our court cannot compete with the Legislature in matters of opinion "upon points of right, reason and expediency." *State* v. *Moore,* 91 N. H. 16, 21. Nor is the "wisdom, effectiveness and *economic desirability*" (emphasis supplied) of a measure for us to decide. *McIntire* v. *Borofsky, supra,* 178.

The police power, under which the plaintiff seeks to sustain the Law, is broad. It includes such varied interests as public health, safety, morals, comfort, the protection of prosperity, and the general welfare. *Dederick* v. *Smith,* 88 N. H. 63, 67. If any

fair reason can be given for including this legislation within the scope of these powers, the Law must be upheld. *Sundeen* v. *Rogers*, 83 N. H. 253, 257. In other words, unless we can clearly see that this Law purporting to have been enacted to protect "free and fair competition . . . against all monopolies . . . or any other unfair means" bears "no relation to those objects," we cannot declare it unconstitutional. *Sundeen* v. *Rogers, supra*, 257.

In order to apply the tests laid down by these authorities to the case before us, it is necessary to discuss briefly certain relevant factors. Fair-trade laws have been and are the subject of sharp differences of opinion among laymen, economists and courts. As was stated in *Sunbeam Corporation* v. *Masters of Miami*, 225 F. 2d 191 (5th Cir. 1955), where the court applying Florida law held the Law unconstitutional, "we well realize that Fair Trade is a highly controversial subject among economists and businessmen as well as in courts." *Id.*, 197. Among opponents of the Law we find such uncommon allies as The Wall Street Journal, certain labor unions, farmers' groups, chain store concerns, and economists. Some eighteen of the thirty-three states which have passed upon the Law within the last decade have declared it unconstitutional.

Turning to the reverse side of the picture, we find favoring the measure small businessmen, retailers of various sorts, large producers and manufacturers such as represented here, the National Association of Retail Druggists, and some economists. Approximately fifteen courts of last resort have upheld the Law, as has the United States Supreme Court in *Old Dearborn Co.* v. *Seagram Corp.*, 299 U. S. 183. This case has not been overruled either expressly or, do we believe, by implication. *Sunbeam Corporation* v. *Masters of Miami, supra*, 194; See also, 21 U. Chi. L. Rev. 175, 207.

States which have upheld Fair Trade Laws include Massachusetts (*General Electric Co.* v. *Kimball Jewelers*, 333 Mass. 665), New York (*Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167) and New Jersey (*Lionel Corp.* v. *Grayson-Robinson Stores*, 15 N. J. 191).

Among the states holding such laws unconstitutional are Arkansas (*Union Carbide & Carbon Corp.* v. *White River Distributors*, 224 Ark. 558), Florida (*Liquor Store* v. *Continental Distilling Corp.*, 40 So. (2d) 371), and Washington (*Remington Arms Company* v. *Skaggs*, 345 P. (2d) 1085 (1959) ). In the latter case the court split five to four with a sharp dissent by the minority.

Typical articles by economists, whose number is legion, attacking fair trade may be found in 65 Yale L. J. 23, and 21 U. Chi. L. Rev. 175. On the other hand, a summary of the case for fair trade and answers to the objections to it appear in 64 Yale L. J. 967. Counsel appear to be in agreement that the United States Department of Commerce favors the Law, while the Department of Justice opposes it. We think it would serve no useful purpose to enumerate further or attempt to analyze the myriad articles or decisions opposing or supporting free trade. If we grant, *arguendo*, that the balance of economic utility now seems to tip against such a law, we cannot say that it bears no relation to the objects of the police power. Nor can we hold that it is such an invasion of individual rights, while the public interest to be benefited is so slight, that we must declare the act of the Legislature "indisputably unreasonable." *Shirley* v. *Commission*, 100 N. H. 294, 300.

In short, we believe that a government of laws is best served when, in such situations as the present, a court exercises sufficient judicial restraint so that it does not substitute its economic or sociological predilections for the judgment of the Legislature. The defendants' contention that RSA ch. 357 violates Pt. I, *Art.* 15th of our Constitution cannot prevail.

II. The claim that the Law constitutes an unlawful delegation of legislative powers so that it violates Pt. II, *Art.* 5th, of the Constitution does not require extended consideration. The Law is complete as to purpose and general policies. It requires no persons or agencies to make it effective. It removes the bar against contracts fixing a resale price and does so, in part at least, in recognition of the continuing property right of the producer in the good will of his business symbolized by his trademark. See 27 Fordham L. Rev. 68, 73. The producer can only take advantage of the Law if his product is in free and open competition. Reasonable standards and policies having been prescribed, there is no invalid delegation of powers. *Conway* v. *Water Resources Board*, 89 N. H. 346. This is not a case of "delegation running riot" as in *Schechter Corp.* v. *United States*, 295 U. S. 495, 553, or of a grant of unfettered discretion such as was given to the Milk Board and condemned in *Ferretti* v. *Jackson*, 88 N. H. 296. Courts in other jurisdictions have reached this conclusion as to the validity of the Fair Trade laws when attacked as being an unlawful delegation of powers. *Old Dearborn Co.* v. *Seagram Corp.*, 299 U. S. 183; *General Electric Co.* v. *Kimball Jewelers*, 333 Mass. 665.

III. Pt. II, *Art.* 83, of our Constitution as amended in 1903, while providing that "free and fair competition in the trades and industries . . . should be protected against all monopolies and conspiracies which tend to . . . destroy it," also states that the Legislature has power to enact laws to prevent the destruction of free and fair competition "through combination, conspiracy, monopoly, or any other unfair means."

In 1941, four years after the enactment of the Fair Trade Law, our Legislature passed an Unfair Sales Act. Laws 1941, *c.* 92, now RSA ch. 358. This statute prohibited any retailer from selling merchandise below cost with the "effect of injuring competitors or destroying competition." It was held constitutional in *McIntire* v. *Borofsky, supra,* 174, and not in violation of the anti-monopoly clause of our Constitution. Similarly, we hold that the present Law does not violate Pt. II, *Art.* 83.

IV. A further contention of the defendants is that the plaintiff's contracts do not comply with our Law because the term "vendor" in section 1 does not include a manufacturer or producer. To adopt this view we believe would destroy a major purpose of the Law. It is the producer or manufacturer who is primarily interested in protecting his trademark, and it is common knowledge that many of these do not sell directly to retailers but through middlemen. The Legislature has provided that "any person" may enforce the contract (*s.* 4), and reading the Law as a whole we have no doubt that the intent was to pass an effective law and not one which would perhaps more often than not be impotent to achieve the desired result of protecting the trademark as symbolizing the good will of the manufacturer or producer. Other courts have reached the same conclusion. *General Electric Co.* v. *Kimball Jewelers,* 333 Mass. 665. It follows that the defendants' claim that the contracts do not comply with our Law must fail.

V. The defendants take the position that the agreements lack consideration. It is axiomatic that the consideration may consist either in a right, interest, profit or benefit accruing to the promisor or a detriment to the promisee. *Frye* v. *Hubbell,* 74 N. H. 358, 372-373. The plaintiff here, although under no obligation to do so, established a fair-trade program into which the dealers including the defendants entered voluntarily by acquiring the goods with notice of minimum resale prices. It may reasonably be presumed that they would not have bought the goods had they not expected to derive a benefit from them. Their knowledge of the establish-

ment of the minimum resale prices "carried with it, upon every principle of fair dealing, assent to the protective restriction, with consequent liability . . . . " *Old Dearborn Co.* v. *Seagram Corp.*, 299 U. S. 183, 193, 194.

The fact that the plaintiff under these contracts can unilaterally change the prices is no cause for holding them invalid. Nowhere does our Law forbid such a practice, and the contracts being entered into freely and for consideration remain enforceable. *Eliopoulos* v. *Makros*, 322 Mass. 485, 488.

VI. The defendants' final claim is that the plaintiff has abandoned or waived any rights it may have under the Law by permitting some dealers to give cash discounts or stamps as a bonus with purchases of trademarked and other merchandise.

While authorities are split on this subject (anno. A. L. R. (2d) 1212), as they appear to be on nearly all phases of the Law, we do not believe our Legislature intended that the giving of stamps, gifts, cash discounts, or the extension of credit should cause those who do so to forfeit their rights under the Law. In practical effect, the giving of stamps comes to no more than a normal cash discount, which has never been regarded as an unfair practice any more than the extension of credit, but merely as a common custom of trade. The practices permitted by the plaintiff here may be equated to the offering of free delivery or free parking. We cannot conceive that the Legislature considered these practices as cut-throat competition at which the Law was aimed.

In conclusion, we hold that the plaintiff has done nothing to forfeit its right under the Law. *Gever* v. *American Stores Co.*, 387 Pa. 206.

*Remanded.*

All concurred.