UNION CARBIDE AND CARBON CORPORATION, a cor-
poration, Plaintiff and Respondent, v. SKAGGS DRUG
CENTER, INC., a corporation, Defendant and Appellant.
No. 10067.
Submitted November 4, 1960. Decided February 10, 1961.
359 P.2d 644

Paul F. Potter, Salt Lake City, Utah, Howard A. Johnson
and Keith P. Johnson, Butte, for appellant. Howard A. John-
son and Keith P. Johnson argued orally.

Luedke & Packwood, Billings, amicus curiae.

John W. Bonner, Helena, amicus curiae, John W. Bonner
argued orally.

Jardine, Stephenson, Blewett & Weaver, Great Falls, amicus
curiae.

Hall, Alexander & Kuenning, John H. Kuenning, Great
Falls, Landels, Weigel & Ripley, Stanley Weigel, San Fran-
cisco, Cal., for respondent.

John H. Kuenning and Stanley Weigel argued orally.

16

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the eighth judicial district, in and for the county of Cascade, which adjudged and decreed that the defendant, Skaggs Drug Center, Inc., be permanently enjoined from advertising, offering for sale or selling, at prices below the minimum retail resale prices then fixed by fair trade agreements, the antifreeze product bearing the trademark of "Prestone", which is manufactured by the Union Carbide and Carbon Corporation.

Hereinafter the respondent, Union Carbide and Carbon Corporation, whose name has since been changed to Union Carbide Corporation, will be referred to as the plaintiff, and the appellant, Skaggs Drug Center, Inc., will be referred to as the defendant.

The facts of this case were stipulated at the trial and are not in dispute. The plaintiff is a corporation duly organized and existing under the laws of the State of Utah. The defendant owns and operates a chain of retail stores including three stores in the State of Montana, one of which is located in the City of Great Falls in Cascade County. The plaintiff is engaged in the manufacture, sale and distribution throughout the United States and the State of Montana of an antifreeze commodity which bears the distinctive, registered trademark of "Prestone". The plaintiff is the sole owner of the "Prestone" trademark. This Prestone brand antifreeze is in fair and open competition throughout the United States and the State of Montana with commodities of the same general class which are produced and distributed by other companies at a wide range of competing prices; the range of such retail prices being from $1.95 per gallon to $3.25 per gallon. The trademark of some twenty-one other competing products are listed in the agreed statement of facts which is incorporated in the bill of exceptions.

The plaintiff has expanded large sums of money in advertising and promoting its Prestone brand and through these efforts it has established a valuable reputation and good will for the product and for the trademark "Prestone" which the product bears. The plaintiff has elected to distribute its Prestone brand antifreeze under its own distinguishing trademark, its reputation for producing high quality products and its good will, relying principally for its retail distribution on national mass-market distribution, with numerous retail outlets throughout the United States, including the State of Montana which regularly handle, stock and display its antifreeze. Each retail outlet has a substantial number of potential customers for Prestone who have been developed by the plaintiff's national advertising, by the good will of the plaintiff of which the "Prestone" trademark is a symbol, by the intrinsic quality of the product and by satisfied users.

The function of each retailer, under mass-market distribution, is to close the sale with these potential customers and this function is impaired or destroyed unless large numbers of retailers throughout the nation carry adequate stocks of Prestone, give it reasonable display, make it readily available on call and provide reasonable selling support for it. Under national mass-market distribution, the consumer does not rely upon the retailer but does rely upon the manufacturer and his reputation to test, research, package, and select ingredients and materials for his product. The consumer also relies on the manufacturer's guarantees of suitability for intended use and for general warranty, although some consumers do ask the retailer to repair or replace products received by such consumer from the retailer in damaged or defective condition.

In order to avail itself of the protection afforded by statutes of the various states legalizing price maintenance contracts, misleadingly named Fair Trade Acts, the plaintiff has elected to enter into Fair Trade contracts with retailers throughout the United States and in states having Fair Trade statutes

which include the State of Montana. See R.C.M. 1947, §§ 85-201 to 85-208. The minimum retail resale prices established by the plaintiff for its Prestone, pursuant to all of its Montana Fair Trade contracts, and pursuant to notices issued in accordance with such contracts, since April 1, 1955, have been $3.25 per gallon in gallon cans, $3.40 per gallon in quart cans and $.85 per quart in quart cans. The plaintiff has exercised due diligence in enforcing its claimed rights under the Montana Fair Trade Act and the accommodating federal statutes, and Montana retailers are generally respecting the plaintiff's claimed rights under these statutes. The plaintiff's product is accordingly being sold throughout the State of Montana, including Cascade County, in a volume which is satisfactory to the plaintiff.

On or about the date of July 11, 1955, and at various times after that date, the plaintiff duly notified the defendant of the existence of its Montana Fair Trade contracts and of the minimum retail resale prices which were stipulated thereunder. With full knowledge of the existence of the Fair Trade contracts of the plaintiff and the prices stipulated thereunder, the defendant acquired and sold plaintiff's Prestone brand antifreeze at prices below the stipulated prices. All of the advertising, offering for sale and selling by the defendant of the plaintiff's Prestone in the defendant's store in Great Falls, was at the price of $2.49 per gallon can which was $.76 less than the minimum retail resale price per gallon can which had been set by the plaintiff in its Fair Trade contracts with other dealers. The defendant's net invoice cost for each gallon can of Prestone, after all deductions and discounts, was $2.13 per gallon and the sales were not made below cost. The defendant was never itself a party to a Fair Trade contract or agreement with the plaintiff but these contracts and agreements were made with other retailers in the state.

These sales by the defendant were not made in closing out its stock for the purpose of discontinuing dealing therein, or

with the trademark wholly removed or obliterated, or because the product sold was altered, secondhand, damaged or deteriorated, or by an officer acting under an order of a court.

It was stipulated that such advertising, offering for sale and selling by the defendant caused serious, continuous and irreparable damage to the plaintiff, the plaintiff's good will, its trademark "Prestone" and to the plaintiff's business in many other vital respects.

After consideration of the agreed statement of facts, the district court entered its conclusions of law in which it found that the Montana Fair Trade Act does not violate any of the state or federal constitutional provisions which are urged against it in the instant case and that it does not violate the Federal Sherman Act, 15 U.S.C.A. § 1 et seq. The district court then issued its final judgment and decree of permanent injunction and its order directing the clerk to issue a perpetual restraining order. Pursuant to this order, a perpetual restraining order was issued by the clerk. The defendant has appealed from such judgment and decree of the district court.

The plaintiff concedes that if the Montana Fair Trade Act or any part thereof be held unconstitutional in this proceeding as applied to these facts, the judgment should be for the defendant. The defendant likewise concedes that if this same Act be held constitutional in this proceeding as applied to these facts the plaintiff shall be entitled to the relief sought and the judgment should be accorded the plaintiff. Therefore, the only issues raised on this appeal are all issues concerning the constitutionality of the Montana Fair Trade Act or its validity in conjunction with the Federal Sherman Act.

The Montana Fair Trade Act was originally enacted by the State Legislature in 1937 as Chapter 42 of the Montana Session Laws of 1937. The Act is now embodied in R.C.M. 1947, §§ 85-201 to 85-208, as follows:

"85-201. *Definitions.* The following terms, as used in this act, are hereby defined as follows:

"(a) 'Commodity' means any subject of commerce.

"(b) 'Producer' means any grower, baker, maker, manufacturer, bottler, packer, converter, processor or publisher.

"(c) 'Wholesaler' means any person selling a commodity other than a producer or retailer.

"(d) 'Retailer' means any person selling a commodity to consumers for use.

"(e) 'Person' means an individual, a corporation, a partnership, an association, a joint-stock company, a business trust or any unincorporated organization."

"85-202. *Permissible agreements in contracts for sale of labeled commodities.* No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trademark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced or distributed by others shall be deemed in violation of any law of the state of Montana by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity at less than the minimum price stipulated by the seller.

"(b) That the buyer will require of any dealer to whom he may resell such commodity an agreement that he will not, in turn, resell at less than the minimum price stipulated by the seller.

"(c) That the seller will not sell such commodity:

"1. To any wholesaler, unless such wholesaler will agree not to resell the same to any retailer unless the retailer will, in turn, agree not to resell the same except to consumers for use and at not less than the stipulated minimum price, and such wholesaler will likewise agree not to resell the same to any other wholesaler unless such other wholesaler will make the same agreement with any wholesaler or retailer to whom he may resell; or

"2. To any retailer, unless the retailer will agree not to resell the same except to consumers for use and at not less than the stipulated minimum price."

"85-203. *Acts violating minimum resale price provisions.* For the purpose of preventing evasion of the resale price restrictions imposed in respect to any commodity by any contract entered into pursuant to the provisions of this act (except to the extent authorized by the said contract):

"(a) The offering or giving of any article of value in connection with the sale of such commodity;

"(b) The offering or the making of any concession of any kind whatsoever (whether by the giving of coupons or otherwise) in connection with any such sale; or

"(c) The sale or offering for sale of such commodity in combination with any other commodity, shall be deemed a violation of such resale price restriction, for which the remedies prescribed by section 85-206 shall be available."

"85-204. *Who may establish minimum resale price.* No minimum resale price shall be established for any commodity, under any contract entered into pursuant to the provisions of this act, by any person other than the owner of the trademark, brand or name used in connection with such commodity or by a distributor specifically authorized to establish said price by the owner of such trademark, brand or name used in connection with such commodity or by a distributor specifically authorized to establish said price by the owner of such trademark, brand or name."

"85-205. *When minimum resale price not binding.* No contract containing any of the provisions enumerated in section 85-202 shall be deemed to preclude the resale of any commodity covered thereby without reference to such contract in the following cases:

"(a) In closing out the owner's stock for the bona fide purpose of discontinuing dealing in any such commodity and plain notice of the fact is given to the public; provided the owner of

such stock shall give to the producer or distributor of such commodity prompt and reasonable notice in writing of his intention to close out said stock, and an opportunity to purchase such stock at the original invoice price;

"(b) When the trademark, brand or name is removed or wholly obliterated from the commodity and is not used or directly or indirectly referred to in the advertisement or sale thereof;

"(c) When the goods are altered, second-hand, damaged or deteriorated and plain notice of the fact is given to the public in the advertisement and sale thereof, such notice to be conspicuously displayed in all advertisements and to be affixed to the commodity;

"(d) By any officer acting under an order of court."

"85-206. *Unfair competition actionable.* Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the stipulated price in any contract entered into pursuant to the provisions of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

"85-207. *Agreements excluded from act.* This act shall not apply to any contract or agreement between or among producers or distributors or between or among wholesalers or between or among retailers as to sale or resale prices."

"85-208. *Act, how cited.* This act may be known and cited as the 'Fair Trade Act'."

The heart of the Act is the so-called "non-signer" provision which is section 85-206 under which a retailer is bound not to sell a commodity at less than the minimum retail resale price which has been set by the manufacturer under a Fair Trade agreement with another retailer in the State of Montana, whether the first retailer has entered into such a Fair Trade agreement with the manufacturer or not. This is true even though the retailer who has not entered into such an agree-

ment determines that he can make a sufficient profit at a price lower than the minimum price which has been set by the manufacturer's Fair Trade agreements with other retailers. This is specifically what has happened in the instant case. The plaintiff, who is the manufacturer, entered into Fair Trade agreements with other retailers in the State of Montana, setting a minimum price at which retailers in the state could sell Prestone brand antifreeze. The defendant was not itself a party to one of these contracts and it sold Prestone brand antifreeze at a price which was lower than the minimum price which had been set by the plaintiff in its Fair Trade agreements with other retailers. However, the defendant still made a profit which it considered to be adequate on its sales of Prestone brand antifreeze.

The defendant attacks the Montana Fair Trade Act on the following grounds:

1. The Act constitutes a price-fixing statute which violates Art. XV, § 20, of the Montana Constitution and the Federal Sherman Act, 26 Stat. 209, 15 U.S.C.A. §§ 1-7 (incl.).

2. The Act deprives the defendant of its property without due process of law, in violation of Art. III, § 3 and Art. III, § 27, of the Montana Constitution and in violation of the Fourteenth Amendment to the United States Constitution. The Act also contravenes the Federal Sherman Act and is not exempt therefrom by the Federal McGuire Act, 66 Stat. 632, 15 U.S.C.A. § 45, which purports to authorize such Fair Trade agreements, since the McGuire Act is itself in violation of the Fifth Amendment to the United States Constitution.

3. The Act delegates legislative power to private individuals or corporations in violation of Art. IV, § 1 and Art. V, § 1, of the Montana Constitution. The Act also contravenes the Federal Sherman Act and is not exempt therefrom by the Federal McGuire Act, which purports to authorize such Fair Trade agreements, since the McGuire Act itself violates Art. I, § 1, and Art. I, § 8, of the United States Constitution.

24

4. The Act was void as being in contravention of the Federal Sherman Act at the time of its enactment and has not been re-enacted subsequent to the passage by Congress of the Federal McGuire Act and is therefore void at the present time.

5. The Act contravenes the Federal Sherman Act and is not exempt therefrom by the Federal McGuire Act because the effect of the Montana Act is to accomplish horizontal price-fixing.

6. The Act impairs the defendant's liberty of contract and deprives the defendant of equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.

7. The Act constitutes special or class legislation in violation of Art. V, § 26, of the Montana Constitution.

In few fields has there been so much controversy, both economical and judicial, as in the field of Fair Trade legislation. Beginning with the State of California in 1931, the legislatures of some forty-six states have passed Fair Trade statutes which are similar to the Montana Fair Trade Act. Most of these statutes were passed during the depression years of the 1930's.

There is no lack of judicial authority in the field concerning the validity of state Fair Trade statutes. There is authority on each side of almost any argument which the defendant has advanced in the instant case against the validity of the Montana Fair Trade Act. The cases of other jurisdictions are in hopeless conflict and cannot be rationalized with each other.

The highest courts of seventeen states have held acts to be constitutional which are similar to the Montana Fair Trade Act. Cases from these states so holding are General Electric Co. v. Telco Supply, Inc., 1958, 84 Ariz. 132, 325 P.2d 394; Max Factor & Co. v. Kunsman, 1936, 5 Cal.2d 446, 55 P.2d 177; Scovill Mfg. Co. v. Skaggs Pay Less Drug Stores, 1955, 45 Cal.2d 881, 291 P.2d 936; Burroughs-Wellcome & Co. v. Johnson Wholesale Perfume Co., 1942, 128 Conn. 596, 24 A.2d 841; General Electric Co. v. Klein, 1954, 34 Del.Ch. 491, 106 A.2d

206; Johnson & Johnson, Inc. v. G. E. M. Sundries Co., 1959, 43 Haw. 103; Kinsey Distilling Sales Co. v. Foremost Liquor Stores, Inc., 1958, 15 Ill.2d 182, 154 N.E.2d 290; Home Utilities Co. v. Revere Copper & Brass, Inc., 1956, 209 Md. 610, 122 A.2d 109; General Electric Co. v. Kimball Jewelers, Inc., 1956, 333 Mass. 665, 132 N.E.2d 652; W. A. Sheaffer Pen Co. v. Barrett, 1950, 209 Miss. 1, 45 So.2d 838; Corning Glass Works v. Max Dichter Co., 1960, 102 N.H. 505, 161 A.2d 569; Lionel Corp. v. Grayson-Robinson Stores, 1954, 15 N.J. 191, 104 A.2d 304; General Electric Co. v. Masters, Inc., 1954, 307 N.Y. 229, 120 N.E.2d 802; Lilly & Co. v. Saunders, 1939, 216 N.C. 163, 4 S.E.2d 528, 125 A.L.R. 1308; Burche Co. v. General Electric Co., 1955, 382 Pa. 370, 115 A.2d 361; Miles Laboratories v. Owl Drug Co., 1940, 67 S.D. 523, 295 N.W. 292; Frankfort Distillers Corp. v. Liberto, 1950, 190 Tenn. 478, 230 S.W.2d 971; Bulova Watch Co. v. Anderson, 1955, 270 Wis. 21, 70 N.W.2d 243.

In opposition to these cases the highest courts of nineteen states have held acts similar to the Montana Fair Trade Act invalid. Eighteen of these states held their Fair Trade statutes unconstitutional on a variety of grounds while a nineteenth state, Virginia, held its Fair Trade Act to have been repealed by implication by the subsequent passage of an anti-monopoly statute. Cases from these states are Union Carbide & Carbon Corp. v. White River Distributors, Inc., 1955, 224 Ark. 558, 275 S.W.2d 455; Olin Mathieson Chemical Corp. v. Francis, 1956, 134 Colo. 160, 301 P.2d 139; Liquor Store, Inc. v. Continental Distilling Corp., Fla. 1949, 40 So.2d 371; Cox v. General Electric Co., 1955, 211 Ga. 286, 85 S.E.2d 514; Bissell Carpet Sweeper Co. v. Shane Co., 1957, 237 Ind. 188, 143 N.E.2d 415; Quality Oil Co. v. E. I. du Pont de Nemours & Co., 1958, 182 Kan. 488, 322 P.2d 731; General Electric Co. v. American Buyers Cooperative, Ky. 1958, 316 S.W.2d 354; Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets, 1956, 231 La. 51, 90 So.2d 343, 60 A.L.R.2d 410;

Shakespeare Co. v. Lippman's Tool Shop Sporting Goods Co., 1952, 334 Mich. 109, 54 N.W.2d 268; Remington Arms Co. v. G. E. M. of St. Louis, Inc., 1960, 257 Minn. 562, 102 N.W.2d 528; McGraw Electric Co. v. Lewis & Smith Drug Co., 1955, 159 Neb. 703, 68 N.W.2d 608; Skaggs Drug Center v. General Electric Co., 1957, 63 N.M. 215, 315 P.2d 967; Union Carbide & Carbon Corp. v. Bargain Fair, Inc., 1958, 167 Ohio St. 182, 147 N.E.2d 481; General Electric Co. v. Wahle, 1956, 207 Or. 302, 296 P.2d 635; Rogers-Kent, Inc. v. General Electric Co., 1957, 231 S.C. 636, 99 S.E.2d 665; General Electric Co. v. Thrifty Sales, Inc., 1956, 5 Utah 2d 326, 301 P.2d 741; Remington Arms Co. v. Skaggs, 1959, 55 Wash.2d 1, 345 P.2d 1085, which overruled Sears v. Western Thrift Stores of Olympia, 1941, 10 Wash.2d 372, 116 P.2d 756; General Electric Co. v. A. Dandy Appliance Co., 1958, 143 W.Va. 491, 103 S.E.2d 310; Benrus Watch Co. v. Kirsch, 1956, 198 Va. 94, 92 S.E.2d 384.

Fair Trade legislation has also been the subject of litigation in the federal courts and in the United States Supreme Court. In 1911, prior to the enactment of any of the state Fair Trade statutes, the United States Supreme Court held, in Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502, that a system of contracts between manufacturers, wholesalers and retailers which fixed the price that the consumer paid for commodities amounted to an unlawful restraint of trade, invalid at common law, and, so far as interstate commerce was affected, invalid under the Sherman Act. The commodities involved in that case were trademarked articles.

In 1936, the United States Supreme Court considered the constitutionality of the Illinois Fair Trade Act, S.H.A. c. 121½, § 188 et seq., which is similar to that of Montana, in the case of Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109. That case upheld the validity of the Illinois Act against assertions that it violated the Fourteenth Amendment to the United

States Constitution as a denial of due process of law, a denial of equal protection of the laws, or an unlawful delegation of power to private persons.

In 1937, Congress enacted the Miller-Tydings Act which amended the Sherman Act by exempting contracts or agreements which prescribed minimum prices for the resale of trade-marked commodities from the prohibitions of the Sherman Act where such contracts or agreements are lawful as applied to intrastate transactions under local law.

In 1951, the United States Supreme Court held, in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, that the Miller-Tydings Act did not authorize price fixing by compulsion on those persons not parties to the contracts or agreements and that statutes which compelled compliance from nonsigners with Fair Trade agreements were in violation of the Sherman Act when they affected interstate commerce.

In 1952, Congress passed the McGuire Act which resolved the conflict between the nonsigner clause of the various state Fair Trade Acts and the Sherman Act by exempting Fair Trade agreements from the Sherman Act even when applied to non-signers. The constitutionality of the McGuire Act has not as yet been determined by the United States Supreme Court although the United States Circuit Court of Appeals for the Fifth Circuit upheld its constitutionality in 1953 in Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 5 Cir., 1953, 205 F.2d 788.

This brings us up to date on the history of the validity of Fair Trade legislation in both the state and federal courts. We now proceed to a discussion of the merits of the instant case.

As has already been noted, there has been much controversy among economists concerning the economic wiseness and soundness of Fair Trade legislation. A determination of whether or not an economic policy is wise or unwise is within

28

the province of legislative powers and the function of this court is only to measure the statute against constitutional standards. See Associated Merchants of Montana v. Ormesher, 107 Mont. 530, 86 P.2d 1031; Great Northern Ry. Co. v. Roosevelt County, 134 Mont. 355, 332 P.2d 501. For this reason we have not attempted to discuss the economic merits, pro and con, of Fair Trade Legislation but have grounded our decision upon constitutional provisions alone.

We would also like to point out that this case is not at all concerned with the Montana Unfair Practices Act, R.C.M. 1947, §§ 51-101 to 51-118. Section 51-103 of that Act makes it unlawful to sell commodities below cost for the purpose of injuring competitors and destroying competition. This provision was held constitutional in the case of Associated Merchants of Montana v. Ormesher, supra, the sole ground being that it did not violate the due process provisions of either the Montana or United States Constitutions. It was stipulated in the instant case that the defendant did not sell Prestone brand antifreeze below cost.

The first objection which is urged by the defendant against the constitutionality of the Montana Fair Trade Act is conclusive of this decision. The defendant contends that the Montana Fair Trade Act violates Art. XV, § 20 of the Montana Constitution. This section provides:

"*No incorporation*, stock company, person or association of persons in the state of Montana, *shall directly, or indirectly,* combine or form what is known as a trust, or *make any contract* with any person, or persons, corporation, or stock company, foreign or domestic, through their stockholders, trustees, *or in any manner whatever, for the purpose of fixing the price,* or regulating the production *of any article of commerce,* or of the product of the soil, for consumption by people. The legislative assembly shall pass laws for the enforcement thereof by adequate penalties to the extent, if necessary for the purpose, of the forfeiture of their property and franchises, or in case

of foreign corporations, prohibiting them from carrying on business in the state.'' Emphasis supplied.

This constitutional provision is quite explicit in declaring that no person or incorporation, etc., can directly, or indirectly, make any contract which fixes the price of any article of commerce in any manner whatever.

We agree with the relationship between the common law and Art. XV, § 20 of the Montana Constitution as characterized in the persuasive and authoritative Montana Law Review article of Coad, ''Are Montana's Price Fixing Statutes Valid?'', 11 Mont.L. Rev. 21, 23 (1950), as follows:

''Perhaps the leading English case on price-fixing was decided by Lord Mansfield in 1758. He not only held an agreement fixing the price of a necessity invalid, but a crime as well, and held: '* * * at what rate soever the price was fixed, high or low, made no difference, for all such agreements were of bad consequence, and ought to be discountenanced.' This might be said to be the earliest statement of the modern rule that price-fixing is illegal per se.

''Agreements not to compete were also held invalid, unless justified, in very early cases. All such direct restraints of competition, by contract, agreement or combination, which were not justified by some other legitimate business purpose, came to be held invalid. *Montana appears to have adopted this as a constitutional principle* [Citing Art. XV, § 20, in the footnote]. In addition other, indirect, restraints of trade may be illegal both at common law or under the anti-trust laws.

''Direct restraints of trade may be justified where they are necessary and ancillary to another legitimate business purpose, providing they do not involve monopoly power or an attempt to create it. However price-fixing agreements are rarely justifiable and require more justification than other restraints. Price competition is the main essential of competition and requires careful protection.

"We are concerned here primarily with price-fixing and hence with the rules against price-fixing in the common law, but it is well to remember that the common-law rule against price-fixing is only a specific application of the principle of opposition to monopolies and monopolistic practices. Price-fixing was illegal because it eliminated competition and tended to create monopolies."

At page 28 of the article, the author, after quoting Art. XV, § 20, of the Montana Constitution, stated: "This [referring to Art. XV, § 20] expresses the common-law opposition to monopolies, and specifically forbids individuals to combine or contract to fix prices 'in any manner whatsoever'. *This adopts the majority common-law view that price-fixing is a direct restraint of trade and illegal per se.* It cannot be construed to tolerate monopolies or combinations in restraint of trade, or reasonable price-fixing." Emphasis supplied.

Does the Montana Fair Trade Act constitute price-fixing? The plaintiff argues that this Act cannot be regarded as price-fixing since the purpose of the Act is not to fix the price but to protect the good will of the manufacturer which is symbolized by trademarks, brands and names. The title of the Act, as set forth in Chapter 42 of the Montana Session Laws of 1937, states its purpose as follows: "An Act to Protect Trademark Owners, Producers, Distributors and the General Public Against Injurious and Uneconomic Practices in the Distribution of Competitive Commodities Bearing a Distinguishing Trade-mark, Brand or Name, Through the Use of Voluntary Contracts Establishing Minimum Resale Prices and Providing for Refusal to Sell Unless Such Minimum Resale Prices Are Observed." The purpose, as embodied in the title of the Act, would seem to be just to protect the trademark, brand or name. However, it might be well to determine just exactly what the Act does. It allows a manufacturer to set a minimum price at which his trademarked commodity may be sold by contract with one retailer in the State of Montana and

then all other retailers within the state are bound not to sell the commodity at a price lower than the stipulated price. The effect of this is, in many cases, to set the exact price at which the commodity is sold within the state. We do not have to go outside the stipulated facts in the instant case to ascertain the truth of this proposition. In this case, the plaintiff set the minimum retail resale price of Prestone at $3.25 per gallon. It was also stipulated that various competing brands sold at a range of prices from $1.95 to $3.25 per gallon. In other words, the minimum price at which Prestone can be sold is as high or higher than the price of any other brand of antifreeze. It also appears that the retailer makes a healthy profit at the price of $3.25 per gallon since the defendant found it possible to make a satisfactory profit by selling the commodity at $2.49 per gallon. We think it is elementary that the Fair Trade agreements of the plaintiff have the necessary effect of setting the exact price at which Prestone is sold. Since the Act accomplishes this result it must be characterized as price-fixing. Any other result would allow the legislature to by-pass constitutional provisions by merely stating seemingly constitutional intentions in the title of the Act, whatever the actual result of the Act happens to be.

We realize that some cases have followed the theory advanced by the plaintiff in determining that Fair Trade statutes do not constitute price-fixing. See Max Factor & Co. v. Kunsman, 5 Cal.2d 446, 55 P.2d 177; Weco Products Co. v. Reed Drug Co., 225 Wis. 474, 274 N.W. 426; General Electric Co. v. Telco Supply Co., 84 Ariz. 132, 325 P.2d 394.

However, we agree with the reasoning expressed in the case of Skaggs Drug Center v. General Electric Co., 63 N.M. 215, 226, 315 P.2d 967, 974, wherein the New Mexico Court stated:

"* * * No matter what high-sounding terms are used, such as 'free and open competition', 'unfair competition', and 'protection of good will', it is a matter of common knowledge that it [referring to that state's Fair Trade statute] is a price-

fixing statute, designed primarily to destroy competition at the retail level. The high-sounding phrases used with respect to the trademark owners are simply excuses and not a reason for the law.

"* * * In other words, they [referring to some other courts] say that this is not a price-fixing statute. To us, this is an unrealistic view and to say that it is not a price-fixing statute is to deny the obvious. Once the price is fixed by contract or contracts between the manufacturer and the retailer or retailers, the non-signer is bound and the price becomes a fixed price to the non-signer. If this power of the owner of trademarked goods to set the price at which the non-signer must sell is not the power to fix prices, then what is it?''

For other cases holding that Fair Trade statutes constitute price-fixing legislation, see Liquor Store, Inc. v. Continental Distilling Corp., Fla. 1949, 40 So.2d 371; Cox v. General Electric Co., 211 Ga. 286, 85 S.E.2d 514; General Electric Co. v. Thrifty Sales, Inc., 5 Utah 2d 326, 301 P.2d 741; Quality Oil Co. v. E. I. du Pont de Nemours & Co., 182 Kan. 488, 322 P.2d 731; General Electric Co. v. American Buyers Cooperative, Ky. 1958, 316 S.W.2d 354. In Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, the United States Supreme Court characterized Fair Trade legis-, lation as price-fixing throughout the course of the opinion.

We conclude that the Montana Fair Trade Act is very definitely price-fixing legislation.

The plaintiff next argues that even if the Montana Fair Trade Act is characterized as price-fixing legislation it does not violate Art. XV, § 20, of the Montana Constitution. This argument proceeds on the theory that Art. XV, § 20, was aimed at preventing monopolies and the Montana Fair Trade Act does not allow for the creation of monopolies because of the qualification contained in section 85-202 that the Act does not apply except as to a commodity which is in free and open competition with commodities of the same general class. We do

not agree with the plaintiff's theory. True, Art. XV, § 20, was aimed at the prohibition of monopolies, but it was also aimed at all restraints of trade including price-fixing. In fact, the language of Art. XV, § 20, flatly prohibits price-fixing.

Admittedly the plaintiff has some judicial authority for his proposition. The Supreme Court of South Dakota in the early case (early in reference to cases deciding the constitutionality of Fair Trade legislation) of Miles Laboratories v. Owl Drug Co., 67 S.D. 523, 295 N.W. 292, held that its constitutional provision, which is similar although not exactly the same as Art. XV, § 20, of the Montana Constitution, was not violated by Fair Trade legislation because the constitutional provision was aimed at the prohibition of monopolies, and Fair Trade legislation did not allow for the creation of monopolies because of the provision that in order to be fair-traded, the commodity must be in free and open competition with commodities of the same general class. In the cases of Sears v. Western Thrift Stores, 10 Wash.2d 372, 116 P.2d 756, and General Electric Co. v. Telco Supply, Inc., supra, 84 Ariz. 132, 325 P.2d 394, the Supreme Courts of the states of Washington and Arizona held that their Fair Trade legislation did not violate the provisions of their state constitutions, which are similar to Art. XV, § 20, of the Montana Constitution on the same grounds urged in the Miles Laboratories v. Owl Drug case, supra. We believe the Sears v. Western Thrift Stores case to be of little weight since it was specifically overruled by the later Washington Supreme Court case of Remington Arms Co. v. Skaggs, 1959, 55 Wash.2d 1, 345 P.2d 1085, although the Court in the later case decided that Fair Trade legislation violated due process provisions and made no holding on the grounds of the anti-monopoly provision in the Washington Constitution. Suffice it to say that we do not agree with the construction that these courts have given their anti-monopoly constitutional provisions.

Utah also has a constitutional provision relating to the va-

lidity of price-fixing. Art. XII, § 20, of the Utah Constitution provides:

"Trusts and combinations prohibited.

"Any combination by individuals, corporations, or associations, having for its object or effect the controlling of the price of any products of the soil, or of any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited, and hereby declared unlawful and against public policy. * * *"

The Supreme Court of Utah held that the Utah Fair Trade Act was price-fixing in violation of Art. XII, § 20, of the Utah Constitution in General Electric Co. v. Thrifty Sales, Inc., 5 Utah 2d 326, 341, 301 P.2d 741, 751. In the course of the opinion the Court stated:

"The difficulty with the type of 'price-fixing' here in question, even if it were for the salutary purposes contended by the plaintiff, whether it be a little or a lot, is that it is a violation of our Constitution. * * *

"Although we are aware of the fact that all doubts should be resolved in favor of constitutionality, it nevertheless appears from the interdiction against any 'combination * * * having for its object or effect the controlling of the price * * * of any article of manufacture * * * ' that the framers simply did not want price-fixing by any combination."

We agree with the reasoning of the Utah case. The plaintiff has attempted to distinguish the Utah case by asserting that the Utah constitutional provision is stronger than Art. XV, § 20, of the Montana Constitution since it refers not only to the object but also to the *effect* of the legislation. We do not believe that the two constitutional provisions can be so distinguished. Art. XV, § 20, of the Montana Constitution states that:

"No incorporation * * * shall *directly, or indirectly,* * * * make any contract * * * *in any manner whatever,* for the purpose of fixing the price * * * of any article of commerce * * *".

Emphasis supplied. We believe that the language of this constitutional provision necessarily refers not only to the object of the legislation but also to the effect of it.

We hold that the Montana Fair Trade Act, R.C.M. 1947, §§ 85-201 to 85-208, is unconstitutional as price-fixing legislation in violation of Art. XV, § 20 of the Montana Constitution. Because of this holding, we find it unnecessary to discuss the other constitutional objections raised by the defendant and also make no finding concerning the constitutionality of the Federal McGuire Act or whether the Montana Fair Trade Act violates the Federal Sherman Act.

The judgment of the district court is reversed and the cause is remanded to the district court with directions to vacate the decree of permanent injunction and to enter judgment in accordance with this opinion.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICE ADAIR, and THE HONORABLE PHILIP C. DUNCAN, District Judge, sitting in place of MR. JUSTICE ANGSTMAN concur.